## WATERMAN *v.* WATERMAN.

### SAME *v.* PORTER.

*(Circuit Court, D. California. March 1, 1886.)*

1. **VENDOR AND VENDEE—CONTRACT—CONSIDERATION—WRITTEN CONTRACT.**
   The real consideration for a contract to convey may be shown, although the contract states only a nominal one.
2. **CONTRACT—ADEQUACY OF CONSIDERATION—EVIDENCE.**
   Where a party advances several thousand dollars to develop certain silver mines, in consideration of which he is to be repaid out of their first product, and receive in addition an undivided fractional part of the mines, *held*, that the contract cannot be avoided on the ground that the consideration was inadequate.
3. **SAME—UNCERTAINTY—HARDSHIP.**
   On the same state of facts, *held*, that the contract cannot be avoided on the ground that the property to be conveyed is uncertain, or that the performance of the contract would work hardship.
4. **SAME—MUTUALITY—OPTION.**
   In an action on a contract, want of mutuality cannot be set up as a defense by the party who has received the benefit, simply because it was left optional with the other party as to whether he would enforce his right.
5. **SAME—SECURITY—EVIDENCE.**
   Evidence considered, and *held* not to sustain the position that the contract to convey was given simply as security for the money advanced.

In Equity.

The actions referred to in the following opinion were brought by the complainant as the assignee of her deceased husband, to compel the specific performance of certain contracts in writing entered into with him by the defendants. One of the contracts was as follows:

"SAN BERNARDINO, May 14, 1881.

"For and in consideration of one dollar to me in hand paid, the receipt whereof is hereby acknowledged, I hereby agree that, at any time within twelve months from this date, upon demand of J. S. Waterman, or his heirs, administrators, or assigns, I will execute to him a good and sufficient deed of conveyance to an undivided twenty-four hundredths (24-100) of the following mines, known as the Alpha, Omega, Silver, Glance, and Front, each being

600 feet front by 1,500 feet long; and the same interest in all the lands that may be located, or have been located, for the development of the above mines; with such machinery and improvements as are to be placed upon the same,— all subject to the same proportion of expenses, which is to be paid out of the development of the above property; all situated near the Grape Vine, in the county of San Bernardino, state of California.

[Signed]                                              "R. W. WATERMAN."

The other contract was of a similar character, but was signed by G. L. Porter, who agreed therein to convey, on demand, to J. S. Waterman three one-hundredths of the same mines. The other facts are sufficiently stated in the opinion of the court.

SAWYER, J., (orally.) This case of Waterman against Waterman, is a suit in equity to compel the specific performance of a contract to convey portions of the silver mines described in the bill of complaint. I have gone through this record very carefully. The testimony is very voluminous, and the principal questions are questions of facts. It would be unprofitable to enter into a long discussion of the evidence, and I shall only announce my conclusions in the matter.

In my judgment the plaintiffs are entitled to a decree for the conveyance of the property, and for a reference to take an account of the profits of the undivided portion of which a conveyance is sought.

The legal points made by the defendants are, briefly: first, insufficiency of consideration. The consideration in the written agreement of conveyance mentioned is one dollar. If the parties agree to sell for one dollar, I do not see that anybody has a right to complain. On the face of the bill, and certainly upon the testimony, there is nothing to justify a holding that the consideration, expressed or real, was inadequate. If the amount expressed is adequate for a deed of conveyance, it certainly ought to be adequate to sustain a contract to convey. Besides, it appears that that was not the real consideration at all. The failure to state the full consideration makes no difference. The parties took up a mining claim, had it partially prospected, and, being impecunious, had no means to develop the mine and procure machinery. They entered into an agreement by which another party was to furnish the money, and they gave a contract to convey a part of the property, and besides agreed to pay the money back out of the first proceeds of the mine. The capitalist, J. S. Waterman, advanced in all something over $26,000, and, in addition to that, his brother, R. W. Waterman, who was one of the parties, received a remission of all the indebtedness due from him to J. S., which was about $11,000; and that, with $3,500 to pay private indebtedness, was the real consideration for the contract. J. S. Waterman did not choose to take a conveyance at the time, for the reason that he did not wish to put himself in the position of a partner. This was substantially, on his side, an option. For the development of the mine, he was willing to furnish the funds and take that risk for a share of the mine, in case it should prove valuable, but he was not

willing to assume any indebtedness that a mining partnership might incur. I think there is no insufficiency of consideration.

The next point is the uncertainty of the property conveyed, and the hardship of performance. I do not think it is uncertain,—the property being mines, well known by name, and necessarily described in the records of the claims,—nor do I think it would be a hardship to enforce the contract. The names and records furnish the means of sufficient identification. There is no hardship about it. It would be a great hardship to the other party if it was not enforced. The party who advanced the money, and who was entitled to receive the conveyance, is the one who took all the risk. He had everything to lose and nothing to gain, on the theory set up by the defendant, while the other side had everything to gain and nothing to lose. The hardship would be directly the other way. It was complainant's assignor's money that was invested, and it was his money that secured the mines. If it turns out that the mines are valuable, and that the conveyance would be valuable to him, the result is still more valuable to defendants.

The next thing set up is want of mutuality. You might as well say that there was a want of mutuality in a promissory note, and that a payee could not recover because the other party could not be compelled to take the money. If the obligors chose to give him this option, and to receive the large consideration of $26,000, which was to be paid back only out of the first products of the mine, besides a large indebtedness which he was not to receive back at all,—if they were satisfied to give him this option, I do not think they can complain if he should choose to accept the option when it turned out to his advantage to do so, even if he was anxious to know the extent of his liability, and to refuse to give authority to them, on the other side, to run him into debt to an unlimited extent. I do not perceive why he could not make the agreement with the consent of the other parties, and why it should not bind the other parties when made. He gave an ample consideration. Whatever effect this might have upon the rights of creditors is outside of the present question. The defendants agreed to it, and it was sufficient as to them.

Other defenses are pleaded which I do not think are sustained by the evidence. One is that it was only given as security. Manifestly it was not intended for any such purpose. If it was security, the security would be no better with than without it, because the money was to be paid only out of the mine, in any event; and if the mine did not produce the money, it would not be paid, and it would have little value as security. Besides, he absolutely gave up an indebtedness not to be returned or secured. That claim as to security was never made until set up in the answer. Even when the complainant first wrote to defendants to demand a conveyance, they did not set up security at all as a ground of defense. The ground relied on by the brother of Waterman was that his brother only took it, so that, in case

it ever came to him, he could give it to defendant's own children. I do not think the testimony is sufficient to justify the court in coming to that conclusion. Evidently the deceased, James S. Waterman, to whom this contract was given, did not act upon that supposition; neither is there any evidence that any of these parties did until after his death, nor even till the conveyance was demanded. I shall therefore order a decree, in pursuance of the prayer of the complaint, for conveyance of the property, and that it be referred to the master to ascertain the profits that have been made.

The other case against Porter is for the same thing, except for a smaller amount. Waterman agrees to convey twenty-four hundredths and Porter three hundredths of the mine. The only defense that Porter sets up is that it was merely as security. Manifestly he did not set that up in response to the demand of the complainant for a conveyance. He seemed at that time to recognize the liability, by implication at least, but was not certain to whom the conveyance should be made. He thought that the family should first settle their affairs before he was called upon to convey; but, briefly, the defense stands upon the same footing as in the other case. These parties all obtained assistance from the deceased; and assignor of complainant here; and through his aid, and at his risk, secured mines that turned out to be valuable, one of them now having one-half and the other nearly one-quarter. Justice requires that they convey the small part so richly earned, and which the defendants agreed to convey.

I am satisfied, from the testimony, that the same decree should be made in this case that was made in the other.