**MILLER et al. v. KIMMEL et al.**

No. 10355—Opinion Filed Sept. 30, 1919.

Rehearing Denied Nov. 4, 1919.

(Syllabus by the Court.)

**1. Appeal and Error—Evidence—Review.**

In an equitable action, the judgment of the trial court will not be set aside unless it is clearly against the weight of the evidence.

**2. Contracts—Option—Mutuality.**

When there is an agreement founded on a consideration, it is not invalid for want of mutuality because one party has an option while the other has not; or in other words, because it is obligatory on one and optional with the other.

**3. Vendor and Purchaser—Option—Consideration.**

$100 is an adequate consideration for an option to purchase within six months an undivided one-half interest in a tract of land for $30,000.

**4. Cancellation of Instruments—Evidence —Sufficiency.**

Evidence in this case examined and the judgment of the trial court held not to be clearly against the weight thereof.

Error from District Court, Creek County; Mark L. Bozarth, Judge.

Action by Ambrose Miller and another against J. D. Kimmel and others to cancel a deed. From judgment for defendants, plaintiffs bring error. Affirmed.

W. H. Kornegay and C. N. Simon, for plaintiffs in error.

Carroll & Mason and A. B. Honnold, for defendants in error.

RAINEY, J. On July 2nd, 1914, for and in consideration of the sum of $100.00 to him in cash paid, Ambrose Miller executed to J. D. Kimmel an option to purchase, within six months for $30,000.00, an undivided one-half interest in Miller's allotment of land in Creek county, Oklahoma, and on the 7th day of November of the same year Ambrose Miller and Alice Miller, his wife, conveyed to the said J. D. Kimmel an undivided one-fourth interest in and to the same land. On June 21, 1917, thereafter, Ambrose Miller and Alice Miller, as plaintiffs, instituted this action against J. D. Kimmel to cancel and set aside and declare null and void said deed. R. H. Fitzgerald, F. E. Stephens, and Fred S. Clinton were also made parties defendant in that action. The plaintiffs, in their petition, in substance, alleged that the plaintiff, Ambrose Miller, was, at the time of the trans-

actions had with the defendant Kimmel, and had many years prior thereto been, a confirmed drunkard; that plaintiff's land had become very valuable, but that through the long use of intoxicating liquors his mind had become so weakened that he did not appreciate the value of money or property and that he would sign anything for anyone in whom he had confidence, or to get money or whiskey; that the defendant Kimmel knew the value of said land, knew the weakness of Ambrose Miller, had gained his confidence, and through drink and intoxicating liquors had secured the six months' option to buy the land at the price above stated; that thereafter, for the purpose of securing the land for nothing, the said Kimmel entered into a conspiracy with Fred S. Clinton to secure an interest in Miller's allotment, and as a result thereof, procured the signatures of the plaintiffs to a deed and contract for an undivided one-fourth interest in said land, and that at the time of procuring said deed the said plaintiff was in an intoxicated condition and that his intellect and mind were so weakened through the use of intoxicating liquors that he did not know what he was doing or what he was about. It was further alleged that Kimmel had conveyed some interest to Fitzgerald and Stephens and that they had knowledge of, or with the exercise of due diligence could have ascertained, the circumstances under which Kimmel obtained his title. It is also alleged that Fred S. Clinton claimed some right, title, or interest in and to the land. The prayer was for a cancellation of the contract and deeds of record and for a judgment decreeing the title to be in the plaintiff, and for an accounting. The defendant, Clinton, did not file an answer. The defendants, Kimmel, Fitzgerald, and Stephens, by way of answer, admitted that Ambrose Miller was a member of the Creek Nation of one-eighth Indian blood, according to the enrollment records; that the land in controversy was his allotment; that on or about July 2, 1914, the defendant Kimmel secured from the plaintiff a six months' option to buy a one-half interest in the land for $30,000.00, said conveyance to be subject to the prior oil and gas lease on said lands then owned by C. B. Schaeffer; that thereafter the plaintiffs executed to the defendant Kimmel a warranty deed for an undivided one-fourth interest in the land; that said deed was made subject to the prior oil and gas leases thereon; that the consideration for the execution of said deed moving from the defendant Kimmel to the plaintiff was the defendant Kimmel's

quit-claiming, releasing, and relinquishing his option on the premises, as evidenced by a written contract of July 2, 1914, and the further consideration of $12,500.00, which was to be paid plaintiffs by causing to be paid over and delivered to them the one-eighth part of all proceeds of all royalties accruing upon said oil and gas mining leases. The defendants denied that the defendant Kimmel drew all the royalties from said land, but alleged that under the terms of the written agreement between the plaintiffs and the defendant, Kimmel, one-eighth of the royalties was paid to the plaintiffs until March 28, 1916, at which time, at the special request of the plaintiff, Ambrose Miller, defendant Kimmel drew one-fourth of said royalties, and in accordance with his contract with the plaintiffs, promptly and immediately paid over to the plaintiffs one-half of the royalties so received by him, and that up to the time of bringing this action the defendant, Kimmel, had received and retained for himself and the defendants, Fitzgerald and Stephens, about $7,300.00, and that a like amount of royalties had been paid to and received by the plaintiffs. The answer also admitted that Kimmel duly conveyed to the defendants, Fitzgerald and Stephens, an undivided one-sixteenth interest in and to the lands described in the petition. The answer further denied that either Paul Clinton or Fred S. Clinton ever acted as the agent of J. D. Kimmel or of defendants, Fitzgerald and Stephens; denied that Kimmel, or any of the answering defendants, ever entered into any conspiracy with Paul Clinton or Fred S. Clinton, or any other person or persons to secure the warranty deed above mentioned. They expressly denied that any of said instruments were procured through fraud, or without consideration, or by the exercise of any undue influence by any of them, and denied that Ambrose Miller was so weakened in mind that he did not fully comprehend the effect of his contract with defendant Kimmel, and alleged that at all times during the transactions he fully comprehended and understood the force and effect of said instruments. They further specifically denied the affirmative allegations in plaintiffs' petition, except those which were admitted. The answer further alleged that the plaintiffs were guilty of laches, for the reason that though plaintiffs understood and comprehended the facts attending the execution and delivery of said deed and contract, they did not make any demand upon, or indicate to, said defendants any desire or intention to rescind said contracts and deed within a reasonable time; that they had ratified

the same, both directly and indirectly, and asked that the plaintiffs' cause of action be dismissed at their costs. By way of amended reply plaintiffs alleged that O. R. Howard was in a conspiracy with defendants to obtain the plaintiff's allotment and that the transactions by which Howard, the Clintons, and Kimmel obtained an interest in said allotment were all part of one transaction and that each depended and was conditioned upon the other. The cause was tried to the court, without a jury, and at the conclusion of the trial the court made the following findings of fact and conclusions of law:

"The court finds that at the time that J. D. Kimmel obtained his option to purchase the lands in controversy from Ambrose Miller in so far as the consideration is concerned as appears from the testimony in this case it was sufficient and said option was valid and binding upon the parties thereto for the term that it was to run; that at the time of executing said option Ambrose Miller was in a position and condition to know, and did know the consequences of his acts.

"The court finds that at the time the defendant, J. D. Kimmel, released his option and received a consideration therefor the sum of $1,000.00 and an undivided one-fourth interest in the land in controversy that said land had increased materially in value subsequent to taking the option, and that the increase in value was an adequate consideration for the execution of said deed from Ambrose Miller and wife to J. D. Kimmel conveying an undivided one-fourth interest in the premises; that at the time said conveyances were made plaintiff, Ambrose Miller, knew and apprehended his acts and was familiar with the terms and conditions under which said transactions were had as evidenced by correspondence introduced in evidence which took place soon after said transactions were made in which the said Ambrose Miller directed the payment of the royalty interests according to the terms as agreed upon between him and Kimmel. That the said Miller accepted the royalties under the terms of the conveyances had between him and Kimmel during all the time from the time of the execution of said deed up and until just a short time before the filing of this suit which covered a long period of time after he had been cured from the drink habit and at a time which the testimony shows conclusively that he was competent to transact his own business.

"The court further finds that no conspiracy existed as between the defendants, J. D. Kimmel, F. E. Stephens. and R. H. Fitzgerald, and Fred Clinton, Paul Clinton and O. R. Howard, to defraud the plaintiff, Ambrose Miller, in this transaction. That

the conveyance made to Kimmel by Ambrose Miller was separate and apart from the Howard and Clinton transactions with Ambrose Miller and was free from any taint of fraud between Ambrose Miller and J. D. Kimmel.

"The court finds there was no relation of confidence existing at the time of procuring the deed between Kimmel and Ambrose Miller.

"The court finds that plaintiff, Ambrose Miller, for a number of years prior and up unto the transaction of the conveyances herein referred to and subsequent thereto was addicted to the drink habit; that he had been placed in a hospital at one time at Cushing, and Doctor Duke's Sanitarium, at Guthrie, and the Keely Institute, at Kansas City, for treatments for the liquor habit, but that his mind was not so affected or clouded by drunkenness that he did not understand business transactions and was thoroughly conversant with the terms of the conveyances at the time they were executed as complained of in this action.

"The court does not find it necessary to answer plaintiffs' request for special findings mentioned in number five and ending with number thirteen for the reason the court found that there was no collusion or fraud practiced between J. D. Kimmel, Paul Clinton, Fred S. Clinton and O. R. Howard as against the plaintiff, Ambrose Miller.

"The court finds that the issues in this case are with the defendants, J. D. Kimmel, F. E. Stephens, and R. H. Fitzgerald, and against the plaintiff, Ambrose Miller."

Counsel for plaintiffs requested the court to make thirteen special findings of fact. The court made findings in response to the first, second, third, fourth, and thirteenth requests, but found it unnecessary to answer plaintiffs' requests for other special findings, for the reason stated in the general findings.

This being an equitable action, we have carefully examined the record, weighed the evidence, and are of the opinion that the findings of fact of the trial court are not only not clearly against the weight of the evidence, but are in accord with the preponderance thereof. Schock v. Fish, 45 Okla. 12, 144 Pac. 584; Crump v. Lanham, 67 Oklahoma, 168 Pac. 43. While the evidence shows that the plaintiff, Ambrose Miller, about the time and prior to the transactions complained of, was frequently drunk and at such times his ability to transact business was impaired, it also shows that he was not always drunk, but was a periodical drunkard, and the testimony of a number of plaintiffs' witnesses, as well as that of the defendants, is to the

effect that when sober he fully comprehended the nature of his transactions and understood what he was doing. Many letters written by him (some in his own handwriting) were introduced in evidence, which support the judgment of the trial court that his mind, although impaired, was not impaired to the extent that he did not thoroughly understand the nature of his transactions and the consequences of his acts. On the contrary, these letters and other evidence show that he had a bright mind and that he thoroughly understood these transactions. The great weight of the evidence is to the effect that at the time plaintiffs signed the option and executed the deed and contract Miller was not intoxicated, and that he thoroughly understood what he was doing. The evidence also shows that at the time the option was secured for $100.00 to purchase an undivided one-half interest in the land for $30,000.00, the $30,000.00 was equal to, if not in excess of, the true value of the one-half interest in the land.

But counsel for plaintiffs contend that as a matter of law the $100.00 consideration for the option was inadequate and was so small as to constitute of itself a badge of fraud, and assert that, there being no adequate consideration, the contract being optional as to one of the parties thereto, it is optional as to both. In Rich v. Doneghey et al., 71 Oklahoma, 177 Pac. 86, this court, speaking through Mr. Justice Miley, said:

"Strictly speaking, a unilateral contract is one in which there is a promise on one side only, the consideration on the other side being executed. Evidently the term was not used in that sense by the trial court, for such contracts are not void, but are equally as valid as bilateral contracts, consisting solely of mutual promises to do some future act, in which the consideration of the promise of one party is a promise on the part of the other. The term 'unilateral' is often used to express absence of mutuality. In the case of contracts made up solely of mutual promises, each the consideration of the other, where the promises of one party are so expressed as not to be absolutely binding on him, but to be performed only if such party so wills, or a promise on but one side and no consideration therefor, the one who makes the absolute promise in the one case, or the sole promise in the other, is not bound to perform. The reason sometimes given is that the contract is unilateral, or void for the want of mutuality. The real reason is that there is not a sufficient consideration for the promise. 'Consideration is essential; mutuality of obligation is not, unless the want of mutuality would leave one party without a valid or available consideration for his promise.' 6 R. C. L. 686. Therefore, what the trial court no doubt meant was that the lessee neither gave nor made a binding promise of anything of value for the grant of the right to explore the land and produce the oil or gas, if any found thereon. In other words, that there was not a sufficient consideration for the grant. In this the court erred.

"It is provided by statute in this state that a written instrument is presumptive evidence of a consideration. Section 934, Rev. Laws 1910. Also that the burden of showing a want of consideration lies with the party seeking to invalidate it."

In 13 Corpus Juris, p. 336, the author or the text says:

"When there is an agreement founded on a consideration, it is not invalid for want of mutuality because one party has an option while the other has not, or in other words because it is obligatory on one and optional with the other. Hence want of mutuality cannot be set up as a defense by the party who has received the benefit simply because it was left optional with the other party as to whether he would enforce his right, and the option to relinquish a right acquired under a contract will not render it unilateral. An option founded on a consideration is a unilateral agreement binding, from the date of its execution, on the party who executes it; and it becomes a contract inter partes when exercised according to the terms. In such a transaction two elements exist: (1) The offer on the one side, which does not become a contract until accepted upon the other, and (2) the completed contract to leave the offer open for a specified time."

See, also, Heyward v. Bradley, 179 Fed. 325; Johnson v. Tripp, 33 Fed. 530; Watts v. Keller, 56 Fed. 1; Waterman v. Waterman, 27 Fed. 827; Willard v. Taylor, 8 Wal. 557; Estes v. Furlong, 59 Ill. 298; Perkins v. Hadsell, 50 Ill 216; Guyer v. Warren (Ill.) 51 N. E. 580; Hayes v. O'Brien, 149 Ill. 403, 37 N. E. 73; Smith's Appeal, 69 Pa. St. 474; Hawralty v. Warren, 18 N. J. Eq. 124; Shroeder v. Franklin, 10 Nev. 355; Aiple-Hemmelman Real Estate v. Spelbrink (Mo.) 111 S. W. 480.

Therefore, an option contract based upon an adequate consideration is not voidable on the ground that one party is bound and the other is not.

Was $100.00 an adequate consideration for the option contract? There are cases which hold that a nominal consideration, such as fifty cents and one dollar, is inadequate, but the weight of authority seems to be that $1.00 is an adequate con-

sideration for an option to run a reasonable period in the absence of fraud or undue influence. Twenty-five dollars has been held to be a sufficient consideration for an option to purchase real estate within four weeks for $4,975.00. Mueller v. Nortman, 116 Wis. 468, 93 N. W. 538; Guyer v. Warren (Ill.) 51 N. E. 580. In Guyer v. Warren, the consideration expressed in the option was $1.00; the real consideration was $50.00 to purchase in one year a farm for $8,000.00, which was held adequate. The court having found on sufficient evidence that Mr. Kimmel had not entered into any conspiracy to deprive Ambrose Miller of his land, that he practiced no undue influence on him, and that Miller was sober and knew what he was doing at the time he and his wife executed the option, we are of the opinion that $100.00 was an adequate consideration therefor.

Subsequent to the giving of the option and at the time of the execution of the deed by Miller and his wife to the defendant Kimmel for the undivided one-fourth interest in the land, it appears that there was a probability of finding the Bartlesville sand on Miller's land, which created a demand for it and rendered it, in the opinion of oil men, much more valuable. The surrender of the option, then, certainly had a cash value of several thousand dollars, and in the absence of fraud and undue influence the release of this option, together with the consideration to be paid Miller out of the oil royalties, was an adequate consideration in law to support the deed.

Finding no reversible error in the record, the judgment is affirmed.

All the Justices concur. except HARRISON, J., absent, and PITCHFORD, J., not participating.