## HEMBREE v. DOUGLAS et al.

No. 23173. Oct. 30, 1934.

Grim & Grim and C. T. Lane, for plaintiff in error.

Reily & Reily, for defendant in error H. T. Douglas.

I. C. Saunders, for defendant in error H. F. Potts.

PER CURIAM. This action was instituted in the district court of Pottawatomie county on the 30th day of August, 1930, by the plaintiff in error, Walker Hembree, against the defendants in error H. T. Douglas and H. F. Potts. Since the parties occupy the same position in this court as they occupied in the trial court, they will be referred to as plaintiff and defendants, respectively. The plaintiff predicates his right to recovery on two causes of action. In the first cause he alleges that he was the owner of an undivided two-eightieths (2/80) interest in certain real estate located in that county and upon which there was located a number of oil wells. That there were several conveyances of a portion of said tract, and the companies purchasing the oil had held the same until they could determine the parties to whom the royalties should be paid. That, in November, 1928, there had accumulated to the plaintiff's interest the sum of $12,000, and that he was approached by the defendant H. F. Potts to purchase for H. T. Douglas the interest of the plaintiff in said land. That Potts represented to him that a suit was pending which affected the title to said real estate, and that he would lose his entire interest. That the said Douglas would purchase his interest for $8,000, but that the plaintiff would retain the back runs or the money that was held by the oil companies. He alleges that such statements were false, fraudulent, and untrue, and made for the purpose of acquiring the interest of the plaintiff. That the plaintiff believed and relied upon such representations and sold his interest to the defendant H. T. Douglas for $8,000; that he would not have executed a mineral deed conveying his interest had he not believed such representations to be true. On the second cause of action he seeks to rescind the mineral deed which he had executed to the defendant Douglas, and seeks to recover some $59,000 damages, by reason of the false and fraudulent representations. He alleges that there was no action pending affecting the title to said land, and that he was only 18 years of age at that time, and had recently had majority rights conferred upon him by the district court. He also alleges that H. F. Potts was acting in the transaction as agent for H. T. Douglas, and that he was prevented from reading the mineral deed by the said Potts. That in April, 1929, the defendant Douglas conveyed a portion of said lands to the defendant Potts, and he prays that the mineral deed which the plaintiff executed to Douglas and the mineral deeds from Douglas to Potts be canceled and set aside. He alleges that on November 12, 1928, at which time he executed the mineral deed to Douglas, there had accumulated to the plaintiff's credit from oil run from said premises, the sum of $12,000, and that subsequent production from said premises to the credit of such interest amounted to some $60,000, and on the second cause of action he prays for judgment for damages in the sum of $59,040. The defendants filed separate verified answers in which they admit that the defendant Douglas purchased the interest of the plaintiff in the land for $8,000, which was in fact paid, and deny that there was any fraud in the transaction or any false or fraudulent representation.

The action was tried on the first cause of action, and at the conclusion of the plaintiff's testimony the trial court found that there was a total lack of evidence to sustain the plaintiff's allegations. A careful examination of the entire evidence convinces us that there was no error in the action of the trial court in so holding. The evidence fails to support the allegations of the plaintiff's petition. The plaintiff testified that at the time of the transaction, he was 18 years of age, and that he had had majority rights conferred upon him by the district court prior to the

405

execution of the deed; that from the standpoint of education he had never gotten farther than the sixth grade in school. He testified that Potts had come to him sometime prior to the transaction and represented to him that there was something wrong with the title to his real estate; that he stated at the time that he was acting as agent for Douglas and would purchase the interest of the plaintiff in the real estate for $8,000, and that the plaintiff had better take that amount, and that he would get the back runs and would be that much ahead. On cross-examination he testified that after the deed had been executed by himself and wife, it was given to him, and he took it to a notary public to acknowledge it, and afterwards brought it back to Douglas, who was in the bank, received his $8,000 and delivered the deed. He also admitted on cross-examination that he executed a number of transfer orders which directed the oil companies who had run the oil to the credit of this interest to pay the same to H. T. Douglas for all oil run and unpaid, and as of November 1st. He also admitted that there was an action pending in the district court of Pottawatomie county involving the title to said lands, and that he had made no investigation of the same, nor had he employed counsel to represent him in that action, and the record shows that a judgment had been entered in that action against him by default. There is some evidence to show that as early as April, 1929, he found that he was not getting any oil runs from this property, although his brothers and sisters who had inherited a like interest were receiving their runs. Notwithstanding this fact, no effort was made on his part to rescind the transaction or cancel the conveyance for any fraud perpetrated upon him until August of 1930, or very nearly two years after the transaction had taken place. He testifies that he was prevented from reading the deed by reason of the fact that Potts told him he had only a few minutes to get to the bank. Evidently when he got to the bank and found that the instrument had not been acknowledged, he took the instrument out of the bank to some notary public and had ample time in which to read it if he had cared to do so. The evidence shows that he had had his rights of majority conferred upon him by the district court. It is fair to assume that in procuring such a decree he must have offered substantial and convincing evidence to the court of his business ability and his capacity to transact business in his own behalf.

In Littlefield v. Aiken, 130 Okla. 142, 265 P. 1054, it is held that:

"A mere preponderance of the evidence which at the same time is vague and ambiguous is not sufficient to warrant a finding of fraud and will not sustain a judgment based upon such finding."

In that case it is further held that fraud must be made clearly to appear.

"Falsity of representation must be certainly proved in order to warrant the exercise of the most extraordinary power of a court of equity in cancellation of an executed contract. The testimony must be clear, unequivocal, and convincing and cancellation cannot be had upon a bare preponderance of evidence which leaves the issue in doubt."

It is also held in that case that inadequacy of consideration alone is not sufficient for cancellation or rescission.

In Bass Furniture Co. v. Finley, 129 Okla. 40, 263 P. 130, the court says:

"The rule is well established in this state that in the absence of any evidence of incapacity to read, or any trick or artifice resorted to to prevent his reading it, a party signing a written instrument that is plain and unequivocal in its terms, is bound thereby. And because he failed to make use of the faculties possessed by him for determining its express provisions, will not be heard to say that the amount agreed to be paid thereunder should be another and different amount."

The court in that case further holds that the burden is on the party alleging the fraud to establish it by competent evidence, clear and convincing.

In Ames v. Milan, 53 Okla. 739, 157 P. 941, the court says:

"One is not relieved from a written contract, by reason of having signed it in ignorance of its contents, unless his signature was procured by fraud or mistake. Merely representing, to a man in possession of his faculties and able to read, that a writing embodies a previous verbal understanding, is not such fraud as will avoid the instrument."

The plaintiff refers to White v. Harrigan, 77 Okla. 123, 186 P. 224, which holds that generally, a misrepresentation of law affords no ground of relief, but where such a representation is made by one who has superior means of information, or professes a knowledge of law, and thereby obtains an unconscious advantage of another who is ignorant, or who is not in a situation to become informed, the injured party is entitled to re-

lief. In this case it is not shown that Potts had any more information relative to the pending action than the plaintiff had, and, certainly, if the plaintiff thought he had any money coming to him by reason of back oil runs, it was his duty to set that claim up in the pending action. There is no evidence showing that he was prevented from doing this; on the other hand, the record shows that he permitted judgment to go against him in that action by default. The other cases cited and relied upon by the plaintiff, to the effect that gross inadequacy of consideration amounting to fraud will furnish a basis of relief, in their application to the facts in the case at bar are not applicable, in that it is not alleged that the consideration was grossly inadequate, nor does the evidence substantiate such a claim. There is an entire failure of the plaintiff to bring himself within the rules laid down in Littlefield v. Aiken, supra.

A review of the entire evidence in this case convinces us that the plaintiff has wholly failed to substantiate the allegations of his petition by a clear preponderance of the evidence, and the trial court was right in entering judgment for the defendants. The judgment is affirmed.

The Supreme Court acknowledges the aid of Attorneys C. B. Holtzendorff, T. L. Marteney, and Richard L. Wheatley in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Holtzendorff and approved by Mr. Marteney and Mr. Wheatley, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.