MILLER et al. v. LONG.

No. 33384. Sept. 20, 1949.

*210 P. 2d 147.*

LaMar & Bailey, of Guymon, for plaintiffs in error.

Rizley, Tryon & Sweet, of Guymon, for defendant in error.

HALLEY, J. We shall refer to the parties by name or as they appeared in the trial court. The plaintiff, H. W. Long, filed this action on July 10, 1941, in the district court of Texas county against Ernest E. Miller, defendant, to collect farm rentals alleged to be due for 1941 under a written agricultural lease covering 160 acres of land in Texas county. Plaintiff alleged that he was the owner of the land and the assignee of the lease which had been executed by the defendant as tenant. He also alleged that the defendant, as tenant, had refused to attorn to him

and was about to dispose of the 1941 crop.

Ernest E. Miller first answered by general denial, denied that plaintiff owned the land, and denied that he had executed the lease sued upon. The defendant also filed a first and second amended answer and cross-petition. In his second amended answer and cross-petition, he abandoned his denial that he signed the agricultural lease, and admitted that the plaintiff was the record owner of the land involved, by deed from the receiver of the American Life Insurance Company, the holder of a mortgage on the land, but that such deed was obtained by fraud on the part of the plaintiff, under circumstances herein related, and to the detriment of the defendant.

Defendant alleged that many years prior to 1940, he and his father-in-law, J. C. Byers, purchased jointly two quarter-sections, one in section 29, being the land herein involved, and one in section 30. That both tracts were under a mortgage in favor of the American Life Insurance Company, which was assumed by him and his co-owner, J. C. Byers. That they paid equal amounts on the cash consideration and installments due until 1938, when their relations became strained, and J. C. Byers refused to pay his portion of the installments due. The defendant then desired to divide the land by taking for himself the 160 acres in section 29, and Mr. Byers taking the 160 acres in section 30. It became necessary to allocate the mortgage indebtedness in order to carry out this plan.

Defendant further alleged that for many years he had relied upon the advice of the plaintiff as to real estate and financial matters, and having full confidence in Mr. Long's honesty and integrity, approached and employed him to negotiate with the mortgagee with the view of dividing the land and securing a proper allocation of the mortgage indebtedness against each tract. That the plaintiff did write letters for defendant in an effort to get the desired division of the land owned jointly by the defendant and J. C. Byers, and also an allocation of the mortgage indebtedness.

A receiver had been appointed for the mortgage holder, and in September of 1940, Donald Harlow came to Texas county as agent for the receiver and called upon the defendant and his wife. They expressed to him their desires about dividing the land and the mortgage with J. C. Byers; but Mr. Harlow advised them that it would be necessary to convey the land to the receiver in order to divide it between the defendant and J. C. Byers and to ratably divide the mortgage indebtedness. That the plaintiff also so advised the defendant. That the defendant and his wife, relying upon the advice of the plaintiff, joined J. C. Byers in the execution of a deed conveying the entire 320 acres of land to the receiver, with the understanding and agreement that the defendant would be permitted to re-purchase the 160 acres in section 29 for one-half the amount of the mortgage debt then due.

Defendant further alleged that the plaintiff secretly conceived a plan to cheat the defendant and to obtain the land for himself, and that in furtherance of this scheme the plaintiff secretly agreed with J. C. Byers to pay him $900 for his equity in the 160 acres in section 30, to induce Mr. Byers to sign the deed to the receiver; and that defendant and his wife would not have signed such a deed had they known the above facts. That in furtherance of the plaintiff's scheme, he induced Donald Harlow to report to the receiver that the deed was in satisfaction of the mortgage indebtedness, and that the plaintiff then offered the receiver $3,000 for both tracts of land, and that the receiver thereupon conveyed both tracts to the plaintiff for said sum.

Defendant alleged that he did not know of these secret agreements by the plaintiff until 1946, when he undertook to secure a re-opening of the receivership matter in Iowa, tendering

one-half of the amount paid by the plaintiff for both tracts of land.

By way of cross-petition, the defendant alleged that the deed to the receiver and the receiver's deed to the plaintiff were secured by fraud, and as a result of the fraudulent conduct of the plaintiff, and prayed that they be set aside and that he be decreed to be the owner of the 160 acres in section 29. He again tendered the sum necessary to reimburse plaintiff for the amount he had paid for the 160 acres in section 29.

The plaintiff replied by general denial, and denied that he had ever acted as agent for the defendant, and denied any confidential relationship between them. Plaintiff further denied that he had been employed by defendant or had been guilty of any fraudulent conduct, or that the defendant had been harmed, and alleged that he had at all times acted in good faith in the transactions involved.

A trial before the court resulted in findings of fact and conclusions of law to the effect that:

(a) There was no confidential relationship existing between the plaintiff and the defendant when the defendant, his wife, and Byers executed the deed to the receiver;

(b) The plaintiff did not induce the defendant to execute such deed;

(c) The plaintiff was entitled to rents accruing in 1941;

(d) and to have his title quieted to the 160 acres of land involved in this action.

A stipulation had been filed in which it was agreed that certain impounded rentals accruing in 1941 would be divided between plaintiff and defendant, and judgment was rendered for the plaintiff for the sum of $314.55, as rent for 1941.

The defendant has grouped his various assignments of error under two propositions, as follows:

"(1) Long breached a confidential relationship of many years' standing in obtaining his title."

"(2) Fraud and deceit were two unseen guests present at the conference in Long's office on September 27, 1940."

While it is true that Mr. Long and Mr. Miller had known each other for more than 20 years prior to 1940, and that Mr. Long had handled a number of business matters for Mr. Miller, it appears that prior to September 27, 1940, when the deed of the defendant and Mr. Byers was executed to the receiver for the owner of the mortgage against the land, the prior friendly relations between these men had come to an end. Mr. Miller testified that their close personal relationship declined in June, 1940, after which time they did not speak when they met on the street, although Mr. Miller said that he considered they were friends until they went to Mr. Long's office in September, 1940. Mr. Miller also testified that when Mr. Harlow arranged for the meeting in Mr. Long's offfice on September 27, 1940, he and his wife arrived five or ten minutes before Mr. Harlow came in, but had no conversation whatever with Mr. Long before Mr. Harlow arrived. There also appears to have been some ill feeling between the defendant and his father-in-law, Mr. Byers, because Mr. Byers said nothing whatever to Mr. Miller or to Mrs. Miller (Mr. Byers' daughter) when he appeared in Mr. Long's office and signed the joint deed. The burden of proving the existence of a confidential relationship is upon the party asserting it. Furrow v. First National Bank et al., 133 Okla. 137, 271 P. 632. This the defendant Miller did not do, and certainly the trial court's finding is not against the clear weight of the evidence.

In his second proposition, the defendant claims that he was defrauded by the plaintiff and the receiver of the American Life Insurance Company, and that such fraudulent conduct resulted in denying him the right to acquire

the 160 acres of land involved herein, and at the price paid therefor by the plaintiff when he acquired title by a deed from the receiver. He argues that he is entitled to have both the deed to the receiver and the deed from the receiver to the plaintiff canceled. The record shows that Mr. Long advised Mr. Miller in February, 1941, that the receiver had conveyed the land to him, but despite this information Mr. Miller did not communicate with the receiver relative to his agreement with Mr. Harlow, the receiver's representative, that the 160 acres involved be reconveyed to him, until 1946, when he sought relief in the receivership court at Des Moines, Iowa. Certainly, the defendant has failed to establish fraud by clear, cogent and convincing testimony, as is required by law. The burden of establishing fraud is upon the party alleging it. In Hembree v. Douglas, 169 Okla. 403, 37 P. 2d 314, the rule in this regard is stated in the second and third syllabus paragraphs as follows:

"2. To constitute actionable fraud, it must be made to appear that (1) defendant made a material representation; (2) that it was false; (3) that when he made it he knew it was false or made it recklessly without knowledge of its truth, and as a positive assertion; (4) that he made it with intention that it would be acted upon by the plaintiff; (5) that plaintiff acted in reliance upon it; (6) that he thereby suffered injury; and (7) all of these facts must be proved with a reasonable degree of certainty. The absence of any of them would be fatal to recovery.

"3. In this jurisdiction, where fraud is alleged in the procuring of a written instrument, the proof must sustain the allegations by a preponderance of the evidence so great as to overcome all opposing evidence and repel all opposing presumptions of good faith."

When we consider the evidence as to fraud, and measure it by the above standards, we are unable to reach the conclusion that the defendant parted with title to the land because of the fraud of the plaintiff. It is only the conduct of the plaintiff that concerns us here. Fraud practiced by the receiver or by his representative could not justify cancellation of deeds to and from the receiver, who was not a party to this action. The undisputed testimony shows that the agent of the receiver, Donald Harlow, advised the defendant that he had no authority to make a division of the land and mortgage indebtedness, but that such action would have to be taken by the receiver in Iowa, and that the division of the land and the allocation of the indebtedness against it could be made only after the land had been conveyed to the receiver. Mr. Miller testified as follows as to what was said by the plaintiff on September 27, 1940, before the deed to the receiver was executed:

"Q. What did Long say to you there that day? A. Mr. Long said: 'Ernest, as Mr. Harlow has said, the only way you can get a division of that property is to sign this deed so the division can be made up there, because it is a joint obligation and he has no power to divide it; he is just their agent.' Q. That is all he had to do with the transaction? A. I relied on his advice. Q. Is this what he said: 'Ernest, in order to get a division as Harlow has told you, is to sign and the division will have to be made up there, as Mr. Harlow is only the agent, and has no power to do it'? A. Yes, sir."

The plaintiff denied that he agreed, after September 27, 1940, when the conveyance was made to the receiver, to secure a reconveyance of the 160 acres claimed by the defendant, and that he advised the defendant that he had not heard from the receiver of Mr. Harlow subsequent to the date of the deed to the receiver. It is admitted that in February, 1941, the plaintiff advised the defendant that the plaintiff had received a conveyance from the receiver to himself. The plaintiff and Donald Harlow both testified that they advised the defendant that he could submit a bid to the receiver for the land, and that his bid would receive equal consideration with other bids submitted. Defendant appears to have taken no

action, insofar as the receiver is concerned, toward securing a reconveyance of the land after he learned that it had been conveyed by the receiver to the plaintiff in February, 1941, until 1946, when he sought to have the Iowa receivership reopened. If defendant believed that he had an agreement to have the 160 acres in section 29 reconveyed to him, it is more than passing strange that he did not get into communication with the receiver immediately upon learning that the plaintiff had a deed to the land.

The inescapable fact remains that the plaintiff and J. C. Byers were under no duty to the defendant to protect his interests.

A careful review of the evidence shows that the findings, conclusions and judgment of the trial court are not against the clear weight of the evidence, but are amply supported by the evidence, and the judgment is therefore affirmed.