**H. L. GAGE and Laverne Gage, husband and wife, Plaintiffs in Error,**

**v.**

**Odis B. ESTEP and Maggie Estep, husband and wife, Defendants in Error.**

**No. 41204.**

Supreme Court of Oklahoma.

March 15, 1966.

Rehearing Denied Jan. 3, 1967.

Clyde Fillmore, Wichita Falls, Tex., Alan B. McPheron, Durant, Ed Dudley, Madill, for plaintiffs in error.

Phillips & Moore, Durant, for defendants in error.

BLACKBIRD, Justice.

This appeal involves an action instituted by defendants in error, hereinafter referred

to by name or as "plaintiffs", against plaintiffs in error, hereinafter referred to by name, or as "defendants", for specific performance of a contract allegedly entered into between the two couples for the purchase, by plaintiffs from defendants, of 1350 acres in Atoka County, Oklahoma, for the sum of $57,000.00.

In July, 1962, plaintiffs resided on, or near, the land, and, for several years, had rented it from the defendant Gage, who resided, and had a trucking business, in or near Wichita Falls, Texas. During those years, plaintiff, Estep, had, on more than one occasion talked to the defendant, Gage, about buying the land for the mutually satisfactory price above mentioned.

On July 27, 1962, Mr. Estep, accompanied by one, Lloyd Daniel, Atoka County Supervisor for FHA, traveled to the Gage home in Texas, and entered into oral negotiations to obtain an option from defendants to enable plaintiffs to purchase the land at the aforementioned price.

The controversy which later arose revolved around the character of this option. While Estep and Daniel were at the Gage home that day, defendant signed one of the FHA printed forms of "OPTION TO PURCHASE REAL PROPERTY", which Daniel apparently carried in his auto for use in connection with his official duties. The form contained certain blanks to be filled in, when used, with such information as the names and addresses of the buyer and seller, the description of the land involved, and certain information concerning the terms of the contract. A purpose of the option, as set forth in paragraph "2" of the printed form, was to enable the buyer to obtain a U. S. Government loan through the FHA for the purchase of the property involved; and the form contained the provision that the buyer's efforts to obtain such a loan constituted a part of the consideration for the option. In other parts of the printed form, the seller agreed to convey to the buyer, by general warranty deed, "a valid, unencumbered, indefeasible fee-simple title

\* \* \* meeting all requirements of the Government \* \* \*". Part of the form's section, or paragraph, "8" provided that the option could be exercised by the buyer, at any time the offer to sell remained in force, by mailing to the seller a written notice of acceptance of the offer; and the form continued as follows:

> "*The offer herein* shall remain irrevocable for a period of ——————— months from the date hereof and *shall remain in force thereafter until one (1) year from the date hereof unless earlier terminated by the Seller*. The Seller may terminate the offer at any time after the ——————— months' irrevocable period provided herein by giving to the buyer ten (10) day's written notice of intention to terminate at the address of the Buyer. *Acceptance of this offer by the Buyer* within ten (10) days *after such notice is received* by him *shall constitute a valid acceptance* of the option." (Emphasis ours).

Before defendants signed the above described option form at the Texas meeting, there was some discussion between the parties present as to how long the option's term should be, and subsequently, within 2 or 3 days after Estep and Daniel returned to Atoka County from Texas with the form, Daniel typed the figure "3" into each of its two blanks above shown. Among other things, he also typed into the space provided for the legal description of the land involved, the words: "No minerals reserved", immediately following the typed land description, and below that, he also typed the following paragraph:

> "The seller agrees that, irrespective of any other provision in this option, the buyer or his assignees may, if the option is accepted, without any liability therefore, refuse to accept conveyance of the property described herein if the aforesaid loan cannot be made or insured because of defects in the title to other land now owned by, or being purchased by, the buyer."

When the above described option form had been signed by plaintiffs, a copy of it was mailed to Gage's office in Texas. Thereafter, when plaintiffs' application for the above mentioned purchase money loan had been approved, Estep, using another FHA form, dated December 31, 1962, with "Subject: Acceptance of Option" printed near its top, and sent by registered mail, notified Gage of Plaintiffs' acceptance of " * * * the offer contained in said option on the terms therein set forth." After its receipt at Gage's office, it was returned to Estep with the following note typed at the bottom of it, above Gage's handwritten name:

"Dear Mr. Estep:

* * * * * *

"If you will check the option you will notice that it has been expired for a month, and as I have already notified you after the option lasped that I did not want to sell now. * * *."

Thereafter, Gage's auditor, Mr. John P. Hayes, on his behalf, addressed a letter dated January 2, 1963, to Mr. Estep, which said letter, omitting less material parts, contained the following paragraph:

" * * *

"Since nothing happened upon the expiration of a 90 day contract between you and Mr. Gage, Mr. Gage has decided to take this farm off the market. The farm is being currently transferred to Trusts established for the benefit of Mr. Gage's two (2) sons.

* * *."

Thereafter, Estep sent Gage, by registered mail, another FHA acceptance-of-option form, dated January 7, 1963, over his signature. Apparently, this further effort on the part of plaintiffs to accept their claimed option from defendants was ignored. Thereafter, in March, 1963, plaintiffs filed their petition in the present action and attached a copy of the completed option form to it as "Exhibit 'a'". Said pleading alleged some of the foregoing facts, and, in addition, that plaintiffs had demanded a conveyance of the subject land from de-

fendants, but that the latter had refused to execute and deliver one to them. Plaintiffs also alleged therein that they were ready and willing to pay the purchase money and accept the conveyance defendants had agreed to furnish them. In said petition, plaintiffs tendered said sum to the court for defendants' use and benefit.

In their answer and cross petition, defendants alleged that on July 27, 1962, they had given plaintiffs an oral option to purchase the subject land, for 90 days only, but that said option was not exercised. They admitted they had signed the original of the instrument evidenced by Exhibit "a" attached to plaintiffs' petition, but alleged that it was then "in blank", and that, when it was later completed, or "filled in", the instrument did not reflect the agreement of the parties, and was not a binding agreement, being null and void. In their cross petition, defendants alleged, in substance, that plaintiffs' only valid claim to, or right in, the land was their agricultural and grazing lease on it; and prayed that their title be quieted against any and all other claims of the plaintiffs.

Pending the trial, depositions of Gage and Daniel were taken, and, when the case was thereafter tried before the court without a jury, Gage's deposition was used in questioning him as a witness. He first testified to the effect that the oral agreement he made with Estep on the day he and his wife signed the printed option form was that plaintiffs were to have the option for only 90 days. He further testified that when he did not hear from Estep by the expiration of that period, he told his sons they could have the property. He also spoke of making a trip to Oklahoma, during which he had orally told Estep, in substance, that he was no longer interested in selling the land. (Such statement, if made, is apparently what was referred to in the hereinbefore quoted note Gage sent Estep on the bottom of Estep's acceptance-of-option letter, dated December 31, 1962). During the course of Gage's interrogation about portions of his deposition, he spoke

of having given plaintiffs an extension of time beyond the 90 days, but his testimony as to this was rather vague and indefinite. He, in effect, admitted that the typing of the "3"s (indicating number of months) in the two blank spaces in the hereinbefore quoted provisions of the printed form's paragraph 8 was not an alteration of the parties' oral agreement, but he stated that he did not read the printed portion of the instrument before signing it. Gage also maintained, for the first time (called to his attention by opposing counsel) that the hereinbefore mentioned typing into the form of the words "No minerals reserved" was an alteration of the parties' oral agreement.

At the close of the evidence, the court granted plaintiffs' counsel permission to amend the pleadings to conform to the proof, counsel's theory being that defendants were estopped to claim that the blanks in the option form were not filled in in accord with the parties' agreement, when they failed to promptly notify plaintiffs of this, after being mailed a copy thereof.

In connection with submission of the case to the trial court, counsel on both sides filed written briefs at the court's instance, and thereafter judgment was rendered for plaintiffs. After the overruling of defendants' motion for a new trial, they perfected the present appeal.

In their arguments for reversal, defendants first contend, in substance, that in seeking specific performance of the hereinbefore described written option contract, plaintiffs were attempting to enforce a writing not in accord with the 90-day option, which was all that the parties' oral agreement called for; and they characterize as "two material alterations" the hereinbefore described typing into the space, provided in the printed form for the land's legal description, the hereinbefore quoted wording concerning minerals, and the provision concerning the buyer's right to abandon the purchase if the contemplated (Government) loan " * * * cannot be made or insured * * *."

We do not think the trial court's judgment, which, under our rule of appellate review, must be regarded as a finding of every fact necessary to support it, was erroneous on the issues presented in defendants' briefs. On the question of whether or not there was any oral agreement between plaintiffs and defendants concerning reservation of any mineral interest in the land on the day defendants signed the printed option form, the first part of Gage's testimony concerning his agreement with Estep was as follows:

"Q Did you have any agreement with him with respect to what minerals he was to receive if this deal was completed?

"A Yes.

"Q Did you have an agreement that was made that day?

"A We didn't reach the agreement; I told him there was a few things off-hand I didn't, but that if he did get the money together that I wanted to talk about with him and I said 'I don't intend to sell you but half of the minerals' and then I said 'there is more things I think we'll have to get together on and I said if he got the money we'd talk about that later."

Gage later testified as follows:

"Q And the thing you or objecting to is the ninety day provision?

"A The ninety day part is alright, but that was all that was supposed to have been in the contract, that I would give him ninety days to get the money.

* * * * * *

"A When I signed the contract he said that was the only thing that would be in there, that I would give him ninety days and no more to raise the money.

"Q And that is what you are objecting to here and now?

"A Yes, and then they put in there was no minerals reserved.

"Q  So then now you are objecting to something else, but your defense is that its not filled out in accordance with the agreement in that the option grants something more than ninety days?

\*    \*    \*    \*    \*    \*

"Q  But your Answer says nothing about objecting to this contract in that it was fraudulently completed when it said all minerals or no minerals reserved, does it?

"A  There was not supposed to be no contract about the minerals and we would decide on that later, according to Mr. Estep."

Both Estep and Daniel testified that in the oral negotiations leading up to defendants' signing of the option contract at the latter's home, or the conversations which occurred between those present there that day, no mention was made of the land's minerals.  In view of the fact that the typing into the contract of the words "No minerals reserved" after the description of the land, would ordinarily be considered superfluous, and surplusage, and unnecessary to show that the legal description of the land covered the land's minerals, as well as its surface, (In this connection notice the presumption indulged under Tit. 16 O. S.1961, § 29), and in view of the circumstances that the contract entered into that day appears to have been merely an outgrowth and culmination of antecedent oral agreement concerning the price to be paid for the land, and that, notwithstanding this, and the further fact that Gage's office had, several months before commencement of the action, received a copy of the contract with the questioned words written on it, yet the day he took the witness stand was apparently the first time Gage ever made the specific claim that this constituted any change in the agreement he had entered into with plaintiffs, the trial judge may have thought that these circumstances spoke more forcefully than Gage's testimony. (In this connection see McClung v. Knapp, Okl., 353 P.2d 831, 835 citing Thompson v.

Giddings, Okl., 276 P.2d 229, 237, and Alexander v. Gee, Okl., 352 P.2d 915, 2nd syll.). At any rate, we cannot say that, if he concluded, as he presumably did, that the writing into the contract of the words "No minerals reserved" was not a material alteration of the contract, such conclusion was contrary to law or clearly against the weight of the evidence.  (As to definition of "material alteration", see Boys v. Long, Okl., 268 P.2d 890, 893).

■  Nor do we agree that, under the circumstances of this case, the typing into the large space left in the printed option form for the land's description, of the hereinbefore quoted paragraph concerning the right of the "buyer" to refuse to accept conveyance of the property if the Government loan "cannot be made or insured \* \* \*", constituted a material alteration of the parties' agreement, or, as urged in defendants' "Proposition II", deprives the contract of mutuality necessary to a cause of action for its specific performance.

■■  An option is a unilateral, rather than a bilateral, contract, and, by its very nature, lacks the mutuality required by the latter.  See 12 Am.Jur., "Contracts", sec. 14, and Miller v. Kimmel, 76 Okl. 233, 184 P. 762, Northwestern Oil & Gas Co. v. Branine, 71 Okl. 107, 175 P. 533, 3 A.L.R. 344, and other cases cited in footnotes 18 and 19 thereof.  As said in the cited Work: "\* \* \* an option supported by consideration is valid even though the holder is not obligated to exercise it."  Defendants make no claim (in contradiction to the recital in the instrument) that plaintiffs' option was not supported by consideration. The purpose of plaintiffs' obtaining the option was to enable them to purchase the property involved, if they were able to obtain a Government loan to finance the purchase.  It must be assumed from the nature of the project, that its success depended upon meeting the Government's title requirements for the making of such a loan, and, under the circumstances, that this was understood by all parties involved.  Therefore, the writing into the option contract of

one such requirement cannot, in the absence of convincing evidence to the contrary, be considered any alteration of the original understanding, or of the implied terms of the parties' agreement. This was presumably the view of the trial judge, and we cannot say that such view is either contrary to law or clearly against the weight of the evidence.

As we have found in the arguments presented by defendants no cause for reversing the trial court's judgment, it is hereby affirmed.