Edwin K. BROOKS and Arlene Jo Brooks, Plaintiffs in Error,

v.

Buck LeGRAND and Phyllis M. LeGrand, Defendants in Error.

No. 41001.

Supreme Court of Oklahoma.

Sept. 19, 1967.

Rehearing Denied Oct. 24, 1967.

Second Rehearing Denied Dec. 12, 1967.

Fitzgerald & Houston, Stillwater, Al T. Singletary, Singletary & Duncan, Perry, for plaintiffs in error.

C. D. Northcutt, Northcutt & Northcutt, Ponca City, for defendants in error.

PER CURIAM.

This is an action for specific performance of a contract to convey a tract of land in Noble County, Oklahoma, brought by Edwin K. Brooks and Arlene Jo Brooks, husband and wife, referred to as plaintiffs, against Buck LeGrand and Phyllis M. LeGrand, husband and wife, the owners of said property, referred to as defendants, and the Citizens State Bank of Morrison, Oklahoma, which was merely a stakeholder and not a party to this appeal.

For a consideration of One Dollar ($1.00) actually paid, the defendants on the 1st day of March, 1962, executed an option to purchase real estate on a U.S. Department of Agriculture Farmers Home Administration form in favor of the plaintiffs, whereby they agreed to sell a tract of land to the plaintiffs for the sum of Fifty-six Thousand Dollars ($56,000.00), which option was to remain irrevocable for a period of one month from the date thereof. On March 31, 1962, a written notice of the exercising of said option was delivered to the defendants by the plaintiff, Edwin K. Brooks.

The defendants refused to comply with the terms of the option and complete the sale, contending that the parties had agreed that neither would be bound by the option, and that it would be used only for the purpose of allowing the plaintiffs to get an appraisal on the land from the Farmers Home Administration, and that if plaintiffs were able to get a Farmers Home Administration loan in a sufficient amount to enable them to purchase the property, and if the defendants were in the meantime able to find another place in which to live, then the parties may have subsequently entered into a binding contract to sell the property. The defendants further alleged that they did not in fact find a place which suited them, and that they decided not to sell the property to the plaintiffs.

The plaintiffs and defendants were neighbors and visited in each others homes on a more or less regular basis. On a number of occasions Mr. Brooks and Mr. LeGrand

discussed the possibility of the sale of LeGrands' farm to the Brooks. The evidence is that Mr. LeGrand put a price of $56,000.00 on the land, which was the amount he had invested, including an unpaid mortgage.

Mr. Brooks decided to attempt to finance the purchase by a Farmers Home Administration loan. In order to obtain an appraisal for loan purposes the F.H.A. required that the loan applicant (Brooks) have an option to purchase the land. Blank option forms were obtained by Brooks and shown to the defendants about February 19, 1962. Several days later, both men went to Ponca City together and discussed the option forms with Mr. LeGrand's banker. The banker told them he could not help them fill out the forms and that they should consult a lawyer. LeGrand testified that he asked the banker if the parties could have a side agreement, the nature of which was not disclosed. Brooks denied that such a question was put and the banker did not testify.

The next day LeGrand and Brooks went to Pawnee and talked to Mr. Lovell, an F.H.A. official. Called as a witness for the defendant, Mr. Lovell testified on direct examination that the parties had asked him if they could have a side agreement in addition to the option contract and that he had advised them that there could be no side deals and all agreements would have to be in the contract. Mr. Lovell said the side agreement could have referred to crops, cattle, possession and other matters that had to be settled. Mr. LeGrand testified that he did not tell Lovell what the side deal covered.

Several days later all of the parties went to Perry again for the purpose of having the option forms completed. They first went to defendants' attorneys' office, but were not able to see him. They left and found another attorney who, after a conference with the parties, completed the form including several typed-in paragraphs on soil bank payments, partial possession and escrow arrangements. After the forms were prepared, the entire option contract was read by the attorney to all the parties and then signed by all parties. Apparently no mention of a side agreement to the effect that the option was not to be binding was made in the attorney's presence. The attorney was not asked to testify if the parties had discussed a contemporaneous oral agreement.

The Farmers Home Administration subsequently made a loan committment of $45,000.00 to the plaintiffs.

The trial court entered judgment for the defendants on the basis of two specific findings: (1) Fraudulent representations on the part of the plaintiffs that the option would never become a binding and enforceable agreement. (2) That the consideration paid by the plaintiffs for the execution of the option was so grossly inadequate as to constitute fraud.

The court has carefully reviewed the entire testimony of all witnesses and finds that of the seven persons, including the parties, who had a conversation concerning the option contract, only the defendants are able to testify that there was a contemporaneous oral agreement to the effect that the only purpose of the option was to enable the plaintiffs to obtain an appraisal from the F.H.A. and that it was not to be binding on the defendants.

The evidence shows that this option contract was the result of negotiation, study and deliberation by both parties. Several days elapsed between the time the option forms were obtained and the date of execution. The defendants had ample opportunity to examine the option contract, which in fact they did so. This case does not present a question of misunderstanding of the contracting parties as to the provisions of the contract. The evidence reveals that the defendants understood the provisions, purpose and effect of the written option contract. Yet, the defendants seek to evade the result of its plain terms by an allegation of fraud in the procurement of the written instrument on the basis of a parol, unperformed agreement.

which is directly contrary to such clear meaning. The burden of proof as to the allegations of fraud is upon the party alleging it and must be established by clear, unequivocal and competent evidence. In Hembree v. Douglas, 169 Okl. 403, 37 P.2d 314, we said that a mere preponderance of the evidence is not sufficient to warrant a finding of fraud. In Miller v. Long, 202 Okl. 34, 210 P.2d 147, we held:

"Where fraud in the procuring of a written instrument is alleged, the proof must sustain the allegations by a preponderance of the evidence *so great as to overcome all opposing evidence and repel all opposing presumptions of good faith.*" (Emphasis supplied).

It appears to us from the evidence as a whole that the sale of this property was first initiated by the defendant, Buck LeGrand, beginning in November, 1961, leading to the consummation of the option contract on March 1, 1962. The evidence conclusively shows that the amount of the purchase price for the property was set by the defendant. Also, during this period the defendant expressed an interest to sell the land to the plaintiff's father-in-law for the same amount. So the execution of the written option contract was not the result of a hasty decision or pressure-like tactics. It was the result of normal negotiations between parties.

Before signing the option contract, the defendant, Buck LeGrand, sought the advice of his banker and Everett Lovell, County Supervisor for the Farmers Home Administration. He also made a trip to Ponca City to consult his attorney who was not in his office at the time, but made no further effort to contact him. If the defendant had any doubts as to the legal effect of the option contract, it should have been dispelled by his conversation with Mr. Lovell. Mr. Lovell testified that he told the parties that there could be no side agreements and that everything should be incorporated in the option. He advised the parties to have the option

contract prepared by an attorney. The attorney who drafted the option was not apprised of any side agreement nor was any such agreement discussed or mentioned by the parties. The attorney testified that each paragraph of the contract was thoroughly discussed and read and that each of the parties were well briefed and knew exactly the contents of the contract.

The legal effect of the option contract is also illustrated by the fact that additional provisions were inserted in the contract that were not provided for on the printed form pertaining to growing crops, ASC and SCS payments, taxes, costs of grass planting, date of possession and the amount of escrow.

A further recognition by the defendants of a binding contract is shown by the testimony of Arley L. Tomlinson, a real estate broker. Mr. Tomlinson testified that in March, 1962, the defendant, Buck LeGrand, came into his office and said he was "interested in buying a farm" as he had "sold his farm." The witness further testified that the defendant had expressed an interest in a particular farm and so later in the week, not having heard from the defendant, he went to the home of the defendants. The defendant advised the broker that "the boy's loan didn't go through that was buying his place, that he wasn't interested any more in buying the place."

In Cromwell v. Ream, 175 Okl. 408, 52 P.2d 752, we held:

"Fraud is never presumed, but must be proved by clear and satisfactory evidence, and when a transaction is fairly susceptible of two constructions, the one which will free it from the imputation of fraud will be adopted."

We are of the opinion that the evidence as presented by the record herein, although conflicting, is at least susceptible to two constructions and that the defendants have failed to sustain the burden as to their allegations of fraud by clear, convincing and competent evidence. We must therefore apply the following rule as an-

nounced in Kinnard-Haines Co. v. Dillingham, 73 Okl. 129, 175 P. 208:

"Where the parties reduce their contract to writing, all oral negotiations, statements, and representation and inducements leading up to the execution thereof are merged therein, and the rights of the parties must be determined and measured by the terms of the written instrument itself."

■ The trial court found that the nominal consideration of One Dollar ($1.00) for a one month option to buy a tract of land for $56,000.00 was not adequate consideration. In Powell v. Moore, 204 Okl. 505, 231 P.2d 695, the court said:

" * * * The option provided and the evidence discloses that plaintiffs paid to defendants One Dollar ($1) as a consideration. This was an adequate consideration for an option to purchase land if the consideration for the purchase of the land is adequate. 49 Am.Jur., Specific Performance, Sec. 117 et seq.; Miller v. Kimmel, 76 Okl. 233, 184 P. 762; Thomas v. Johnson, 55 Utah 424, 186 P. 437. In the Utah case it was said:

" 'It is contended by respondent that $1 is an inadequate consideration for the option; that to tie up land worth $6,000 for the time provided for in the option is an inequity so manifest, so strong, and so gross as to shock the conscience of the chancellor.

" 'According to the weight of authority, a nominal consideration for an option is sufficient. Miller v. Kimmel, 76 Okl. 233, 184 P. 762; Smith v. Bangham, 156 Cal. 359, 104 P. 689, 28 L.R.A.,N.S., [522], 523; 25 R.C.L. § 37, p. 237; James, Option Contracts, § 326. If the consideration for the purchase of the property is adequate, the consideration for the option to purchase, however small, is binding. To hold otherwise would be to destroy the efficacy of contracts that are made daily in the course of real estate, mining, and other business pursuits. Mathews Slate Co. v. New Empire Slate Co., C.C., 122 F. 972.' "

■ There is no evidence to show that $56,000.00 was not an adequate consideration for LeGrands' farm. On the contrary, Mr. LeGrand testified that he was the one who fixed the price. The trial court had no evidence on which to base a finding of inadequacy of consideration for the farm, and if the purchase price was adequate, a nominal consideration for the option was adequate.

■ In an equitable action this court, on review, will consider the entire record and weigh the evidence, and when it is determined that the judgment rendered by the trial court is against the clear weight of the evidence or contrary to law, this court will render, or cause to be rendered, a judgment that should have been rendered by the trial court. Brown v. Bivings, Okl., 277 P.2d 671. We have reviewed this record, and it is our conclusion that the trial court's judgment is against the weight of evidence, and contrary to law.

We therefore reverse said judgment and remand the case with instructions to enter judgment for specific performance of said contract.

This Court acknowledges the services of JOHN R. CARLE who with the aid and counsel of WILLIAM W. BAILEY and LLOYD E. COLE, Jr., as Special Masters, prepared a preliminary advisory opinion. These attorneys have been recommended by the Oklahoma Bar Association and appointed by the Court. The Chief Justice then assigned the case to HODGES, J., for review and study, after which and upon consideration by the Court, the foregoing opinion was adopted.

JACKSON, C. J., and DAVISON, BLACKBIRD, BERRY, HODGES and LAVENDER, JJ., concur.

IRWIN, C. J., and WILLIAMS and McINERNEY, JJ., dissent.