## UNITED STATES v. ROBERTS.
### No. 728.

Circuit Court of Appeals, Tenth Circuit.

Nov. 18, 1932.

Ralph L. Carr, U. S. Atty., John G. Reid, Asst. U. S. Atty., and Richard A. Toomey, Atty., Veterans' Administration, all of Denver, Colo., for the United States.

S. R. Owens, of Denver, Colo., for appellee.

Before LEWIS and McDERMOTT, Circuit Judges, and POLLOCK, District Judge.

POLLOCK, District Judge.

This is an action on a war risk insurance policy, in which the plaintiff alleges in his petition that he has been permanently and totally disabled since May 2, 1918. He tenders into court for cancellation a converted policy in the sum of $8,000, which he secured in May of 1927. The claim is that he is totally disabled from pulmonary tuberculosis and enteritis tuberculosis and dementia præcox. The jury found for the plaintiff, and two questions are presented on this appeal: (1) Was there substantial evidence of total disability on May 2, 1918; (2) was there error in admitting the evidence of the history of the case given to certain doctors?

The evidence most favorable to the plaintiff disclosed:

Plaintiff was discharged from the army on May 7, 1918, under a surgeon's certificate of disability. He was on sick leave most of the time for two months before his discharge. Before he entered the army he was in the cleaning and pressing business at Muskogee, Okl. After getting out of the army he followed that occupation for two or three months, but quit because he was tired, could not sleep, and was losing weight. He was out of work for six months. Then he operated a shop of his own at Muskogee, for four months, but broke down and could not carry it on. He took vocational training at Muskogee in bookkeeping, and followed that for about eight months. He then took a rest cure for ten months. He then worked at the Bell Tailoring Company for three months, when he quit on account of tuberculosis. Between 1921 and 1924 he did no work. In 1924 he worked for eight months in a cleaning establishment in Denver. In 1925 he took up vocational training at Denver as a bookkeeper but never held a bookkeeping position. He peddled some wares for three or four months in 1925. He conducted a cleaning business in Colorado in 1927 for about five months, but broke down and has done no work since. He has had pains in his stomach for twelve years. His army record discloses that he was diagnosed as having pleurisy and later as having dementia præcox.

Doctor Rose testified that he is in the general practice in Denver. He examined plaintiff in October, 1926, and found a considerable tubercular involvement. From his examination he believed it was a case of long standing, and that it had existed since May 2, 1918. He testified he did not believe that Mr. Roberts was able to carry on continuously a substantially gainful occupation since May 2, 1918. He said he would not have the vitality to work steadily.

Doctor Snyder, a government physician, testified he examined him in April, 1927, and in September, 1928. He diagnosed him as having a peptic ulcer and a tuberculosis enteritis. He said it was impossible to tell how long it had lasted; that tuberculosis enteritis is almost always secondary to pulmonary tuberculosis, or vice versa.

Doctor Delehanty testified that he had examined the plaintiff for the purposes of this trial, during the trial. It appeared that he was to testify as to his present mental condition, and that a diagnosis as to the present mental condition is predicated largely upon the conversation had with the patient, whether it is rational or otherwise. On that theory the trial court permitted the doctor to testify to everything which the plaintiff told him. This story included his age, where he lived, age of his father and mother and brothers and sisters. He told all about his childhood diseases, and in fact gave a complete history of his life. It disclosed that he had not been well before he entered the army. He told about the same story as to his condition during the time he was in the army and after, as he told on the witness stand. This evidence also disclosed that he was under the hallucination that the doctors were in a conspiracy against him. The witness testified that he did not respond to questions as an ordinary man would, but would get

mixed up. Predicated on these things, the doctor testified that he was suffering from dementia praecox. He testified that a man with dementia praecox is not able to follow continuously a gainful occupation.

Doctor Troute, a tubercular expert, who had been employed by the government, testified that he examined the plaintiff about a year before the trial. He discovered both pulmonary and intestinal tuberculosis, of long standing.

The government doctors disagreed as to the extent of the pulmonary tuberculosis, but agreed that if he had dementia præcox he was unable to carry on a substantially gainful occupation. One doctor testified that a man might have dementia præcox and it would escape the attention of a doctor who examined him for another purpose. Another doctor testified that up to 1927 the plaintiff did not have tuberculosis, nor any mental disease. Another government doctor testified that in September, 1923, he had inactive tuberculosis of both lungs. There were other doctors who testified that he had some tuberculosis, but not much; and alienists testified that he had psycho-neurosis and not dementia præcox.

■ We are of the opinion that there was sufficient evidence to go to the jury on the question of his total disability. He was discharged from the army as one having dementia præcox. Doctor Delehanty and Doctor Work, both men whose qualifications were admitted, testified that he now has dementia præcox. They both say that dementia præcox is an incurable and progressive disease. Both they and the government doctors testified that one who has dementia præcox is not able to follow continuously a substantially gainful occupation.

We have then this situation: When he was discharged from the army he had dementia præcox; it is incurable. One who has it cannot work. In addition to this, there is the evidence that he tried repeatedly to work steadily and failed. This is strong evidence that he was not able to follow "continuously" a substantially gainful occupation.

■ We think there was doubt as to whether or not the trial court should have admitted all the statements that the plaintiff made to the doctors during the course of his examination. If this were an ordinary disease, there would be error in the admission of this evidence. The true rule is laid down by Judge John Sanborn in United States v.

Nickle (C. C. A.) 60 F.(2d) 372, in which he relies upon the opinion of the Third Circuit in Delaware, etc., R. Co. v. Roalefs, 70 F. 21. That rule is that if a patient goes to a doctor for treatment, with no expectancy of using him as a witness, the doctor may recite the statements made to him by the patient upon which he formed his opinion. On the other hand, if he goes to the doctor, not for medical treatment, but for testimony, his statements are inadmissible. It being clear that the plaintiff did not go to either Doctor Delehanty or Doctor Work for treatment, we think the statements made by the plaintiff to the doctors would be hearsay, if the case were not a mental one.

The able trial court declared this to be the ordinary rule; but he said where the question was whether a man had a mental disease, another rule applied. That is undoubtedly true as to many statements made to the doctor. If a man comes into the office of a doctor or a lawyer, and makes utterly irrational statements, the fact that he makes the statements is some proof of a mental disease. Such statements are not admitted as proof of the facts stated; their evidentiary value lies in the fact that they were made. The question is not whether the statements are true, but whether they were made. They are not within the hearsay rule.

■ Many of the statements made by the plaintiff to Doctor Delehanty fall clearly within this class. For example, the plaintiff's statements to Doctor Delehanty that the doctors did not treat him right, and that the doctors had been against him all the time; and his unintelligible story about some trouble he had in the army. These statements were some proof that he was deranged, and are properly admissible for that purpose. A specialist in mental diseases, or any other witness testifying to sanity, may testify to any irrational things that were said. This rule does not apply to all that plaintiff told Doctor Delehanty. Many of his statements were rational, including his entire family history. We think the true rule should be that a doctor testifying to the mental condition of a patient, may testify only to statements which tend to support his opinion. Doctor Work testified only to the fact of a long examination, the nature of the questions asked him, and the abnormality of the responses.

■ That Doctor Delehanty testified to many rational statements is not, however, reversible error. The objection that was made was to any "further testimony from this witness

for the reason that it appears that the witness examined the plaintiff during the trial and it further appears that his testimony is based on history given him by the plaintiff at that time." This is not a sound objection. Yet this was the only objection that was ever made. There was no motion made to strike out particular parts of the narrative. The ruling of the court on the objection made was correct. Doubtless if an objection had been interposed to a recital of facts by the doctor which disclosed no abnormality, that objection would have been sustained.

But there is another reason: Almost all of what the plaintiff told the doctor was entirely harmless. It made no difference about when his father died; or the number of his brothers and sisters. Much of it that he related to the doctor was favorable to the government. He said that there never was any tuberculosis or mental disease in the family. He said he was not well before he entered the army. His testimony as to his condition in the army and afterwards, is substantially what the plaintiff himself testified to and what the army records disclosed. If there was error, we think it was quite immaterial.

The judgment should be affirmed.