## STATE v. RIDDLE.

No. 7041.   Decided January 5, 1948.   (188 P. 2d 449.)

See 42 C. J. S,. Indictments and Informations, sec. 156. Sufficiency of indictment as affected by bill of particulars, see note, 10 A. L. R. 983. See, also, 27 Am. Jur. 671.

*J. Vernon Erickson,* of Richfield, for appellant.

*Grover A. Giles,* Atty. Gen., *Ferdinand Erickson,* Dist. Atty., of Richfield and *Zar E. Hayes,* of Salt Lake City, for respondent.

WOLFE, Justice.

Appeal from a judgment of the sixth district court convicting defendant of involuntary manslaughter.

The facts out of which this case arises are largely without dispute, and are substantially as follows:

At about midnight, on the evening of July 7, 1945, the defendant was driving his Dodge truck northerly along highway No. 89 at 25 to 30 miles per hour. At Central, Utah, where the road curved rather sharply, defendant's truck collided with an automobile being driven southerly along the same highway by one Gerald Wells. Marion Wilcock, a passenger in the Wells automobile, was severely injured in the collision, and he died of his injuries some three days later.

The charging part of the information under which defendant was convicted, reads as follows:

"* * * That on or about the 8th day of July, A. D. 1945, at and within Central, Sevier County, State of Utah, the said Charles Riddle being then and there engaged in the doing of an unlawful act not amounting to a felony, to wit, operating a motor vehicle on the left half of the Utah State Highway No. 89, while driving in a northerly direction in the night time on said highway; that at the same time and place, an automobile driven by one Gerald Wells was moving along said highway No. 89 in a southerly direction; that while the said automobile driven by Charles Riddle and the said automoile driven by Gerald Wells were moving along, as aforesaid, and while the said Charles Riddle was driving a motor vehicle on the left half of the

highway, as aforesaid, he did run, operate and propel the said motor vehicle into and against the motor vehicle driven by Gerald Wells, as aforesaid, thus and thereby inflicting in and upon the body of one Marion Wilcock, a passenger in the automobile driven by Gerald Wells as aforesaid, divers mortal fractures, bruises, wounds and contusions, the said Marion Wilcock languished a short time, and then, on the 10th day of July, A. D. 1945, at the Sevier Valley Hospital at Richfield, in the County of Sevier, State of Utah, did die; and so the said Charles Riddle, in the manner and form aforesaid, while in the commission of an unlawful act not amounting to a felony, without due caution and circumspection, carelessly, recklessly, wantonly, wilfully and unlawfully, in the manner and at the time and place aforesaid, but without malice, the said Marion Wilcock did unlawfully kill, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Utah."

The defendant served upon the attorneys for the state a demand for a bill of particulars in the following language:

"You and each of you will please take notice that the defendant, Charles Riddle, hereby demands a bill of particulars in the above entitled action."

The court denied defendant's demand for a bill of particulars, and defendant assigns this as error. It will be noted that the information in this case was not in the short statutory form provided by Sec. 105-21-6, U. C. A. 1943, but was in the archaic common law form. It will be observed, too, that the demand for a bill of particulars was general in form, and did not specify wherein the information was so general that defendant could not properly prepare his defense.

Defendant relies on Sec. 105-21-9(1), U. C. A. 1943, which provides as follows:

"When an information or indictment charges an offense in accordance with the provisions of section 105-21-8, but fails to inform the defendant of the particulars of the offense, sufficiently to enable him to prepare his defense, or to give him such information as he is entitled to under the constitution of this state, the court may, of its own motion, and shall at the request of the defendant, order the prosecuting attorney to furnish a bill of particulars containing such information as may be necessary for these purposes; or the prosecuting attorney may of his own motion furnish such bill of particulars."

Defendant contends that under this section the trial court was required to grant his demand for a bill of particulars. In support of this he cites the language of Mr. Justice Folland in *State* v. *Solomon,* 93 Utah 70, 71 P. 2d 104, 106, as follows:

"The granting of the bill of particulars is not discretionary with the court as it was at common law, but is a right which the defendant can demand and which the court must grant if the statutory conditions are present."

The defendant seems to overlook the last phrase of the quotation

"* * * *if the statutory conditions are present."*

And what are the statutory conditions? The statute says:

"When an information * * * charges an offense in accordance with the provisions of section 105-21-8, but fails to inform the defendant of the particulars of the offense, sufficiently to enable him to prepare his defense, or to give him such information as he is entitled to under the constitution of this state. * * *"

Under the express language of the statute, the ordering of a bill of particulars on request of defendant is mandatory only when the information charges an offense in accordance with Sec. 105-21-8, *and* fails to inform defendant of the particulars of the offense sufficiently to enable him to prepare for his defense, or to give him such information as he is entitled to under the state constitution. Sec. 105-21-8 provides that an offense may be sufficiently charged:

"(a) By using the name given to the offense by the common law or by statute.

"(b) By stating so much of the definition of the offense, either in terms of the common law or of the statute defining the offense or in terms of substantially the same meaning, as is sufficient to give the court and the defendant notice of what offense is intended to be charged.

"(2) The information or indictment may refer to a section or subsection of any statute creating the offense charged therein, and in determining the validity or sufficiency of such information or indictment regard shall be had to such reference."

Clearly the information in this case did not charge an offense in accordance with the provisions of Sec. 105-21-8. On the contrary, as we have heretofore noted, the information was in the common law form. Where the information is in the common law form, the mandatory provisions of Sec. 105-21-9 (1) do not apply, and the ordering of a bill of particulars is within the sound discretion of the trial court. *People* v. *Tenerowicz*, 266 Mich. 276, 253 N. W. 296; *People* v. *O'Hara*, 278 Mich. 281, 270 N. W. 298; *People* v. *Southern*, 306 Mich. 324, 10 N. W. 2d 901. See also *People* v. *Parkinson*, Gen. Sess., 43 N. Y. S. 2d 690. We do not think the trial court abused its discretion in denying a bill of particulars.

Defendant contends that the information was not sufficient to advise him of the nature and cause of the accusation, and he could not know, what particular unlawful acts, or in what particular way the crime charged, would be claimed to have been committed by him, and until the evidence was adduced the defendant could not know what he was called upon to meet and answer. We think the information sufficiently informed defendant that he was charged with

"operating a motor vehicle on the left half of the Utah State Highway No. 89, while driving in a northerly direction * * * on said highway."

Defendant has not shown us that he was prejudiced in any manner by the denial of the demand for a bill of particulars. It does not appear that he was surprised by any of the state's evidence, or that he failed to procure any evidence in his own behalf, which he might have done, had he been furnished with a bill of particulars. The trial court did not abuse its discretion by denying the bill of particulars demanded by defendant.

Defendant's second assignment of error relates to the admission of evidence that defendant had consumed alcoholic beverages on the evening on which the fatal accident oc-

curred. Defendant contends that he was not charged with driving while intoxicated, and therefore any evidence of drinking was inadmissible. Mrs. Kramer, a witness, for the state, testified as follows:

"Q. Now at that time did you notice any drinking? A. No.

"Q. Your answer is 'No'? A. Well there was.

"Q. Mrs. Kramer, we are just trying to get to the truth of this matter. To the best of your recollection, was there? A. Well, he had a bottle with just about two swallows in it.

"Mr. J. Vernon Erickson: Your honor, that isn't material. I object because it is incompetent, irrelevant, and immaterial. There is nothing in the complaint that alleges any liquor at all.

"The Court: The objection will be overruled."

It will be noted that Kramer testified to defendant's drinking, without objection on the part of the defendant's counsel. The only objection that was made, was to the answer that defendant had a bottle with two swallows in it. The objection to this answer was not timely made, but came after the answer. A motion to strike would have been the more correct procedure. However, we shall not allow the question raised by this assignment of error to rest on such technicality.

Thereafter both parties introduced without objection evidence on the question of whether or not the defendant had been drinking on the evening of the fatality. Evidence that defendant had consumed intoxicating beverages within a short time before the collision might have some ■ probative value on the question of whether or not he was driving on the left hand side of the road at the time of the collision. But whether or not it was admissible is a question which we need not now decide. The only testimony to which any exception was preserved was that defendant had a bottle with about two swallows in it. This could not be prejudicial to defendant, since mere possession of a near empty whisky bottle, without more, would not necessarily show that defendant had been drinking on the evening in question, and even if it did tend to so prove, there was other evidence of the same fact unobjected to; hence, this testi-

mony, even if it tended to prove that the defendant was drinking on the night in question, could not have been prejudicial. There being no objections or exceptions, to the other testimony relating to the use of alcohol by the defendant on the night in question, it follows that the assignment of error is without merit.

The point finally relied upon by defendant is that the evidence was not sufficient to sustain the judgment. In support of this argument, he first contends that the evidence does not support a finding that he was travelling on the left side of the road. A reading of the record reveals that there is no merit in this contention.

Valeria Black, a passenger in the Riddle truck, testified that, just before the collision, Riddle's truck was over the center line, and that she

"told him to move over on his right side of the road because it was a dangerous curve and there had been a lot of accidents there."

Martina Kramer, another passenger in the Riddle machine, testified that her view of the road was obstructed by Valeria Black, but that she heard Miss Black warn the defendant to get over onto his side of the road. Wells, the operator of the automobile with which Riddle collided, testified that the defendant was driving on the wrong side of the highway. This testimony was corroborated by the witnesses Ship and Utley. Other witnesses who saw the scene of the collision immediately after the occurrence of the accident, testified that both vehicles were on the west half of the road (defendant's left as he was travelling north). There was also testimony that the broken glass and other debris of the accident were mostly on the left hand side of the road. From this mass of evidence we think that the trier of fact could well find that defendant was travelling on the wrong side of the road at the time of the collision.

But, defendant argues, even though he were partially across the center line, still his conduct did not amount to criminal negligence as defined in *State* v. *Lingman*, 97 Utah 180, 91 P. 2d 457, 466, i. e.

"reckless conduct or conduct evincing a marked disregard for the safety of others."

Defendant contends that his conduct was at worst

"mere thoughtlessness or slight carelessness."

The witnesses Kramer and Black, called by the state, testified that up until the time of collision defendant had been driving in a careful and prudent manner, at a moderate rate of speed (about 25 miles per hour) and on his own side of the road. Defendant, of course, testified that he was on the right side of the road at the time of the collision. It is defendant's position here that even though he did allow his vehicle to go partially over the center line just before the collision, that was a mere momentary lapse—at most civil negligence, and certainly not

"reckless conduct or conduct evincing a marked disregard for the safety of others."

As to how far the Riddle machine was across the center line and onto the left hand side of the road the evidence is as follows:

Black testified that Riddle's truck was over the center line "about a foot or a foot and a half." Wells testified very positively that "he was coming on my side of the road." Ship testified that the Riddle machine "was on the left side of the road" and "coming right at" the Wells vehicle. Utley testified that "the truck was coming right for us." We think from all this testimony that the trier of the facts could fairly infer that the defendant's vehicle was substantially or entirely on the left hand side of the road. In fact, this conclusion seems inescapable from the record before us.

Most of the witnesses who did not see the crash, but saw the scene of the collision immediately thereafter, testified as to the position at which the vehicles came to rest. It appears from the record that a map or diagram of the scene of the accident was placed on a blackboard before the

court, and these witnesses testified with reference to the diagram. That diagram is not now before us, and of course the testimony of witnesses stated merely in reference to the blackboard drawing becomes practically meaningless to us. However, insofar as we are able to understand that testimony, it seems to indicate that both vehicles came to rest facing in a northeasterly direction, on the west or left half of the highway. The rear end of the Riddle machine was on the left shoulder of the road, and the right front wheel was on, or just over, the center line of the highway. The Wells vehicle was parallel to Riddle's truck, but about four feet further back from the center line.

Whether or not it is criminal negligence to drive an automobile in such a manner that all or part of it extends over the center line of a highway must necessarily depend upon all of the surrounding circumstances. We do not say that in every case it is criminal negligence for a driver to permit part of his vehicle to project over the center line and onto the left hand side of the highway. Under some circumstances such conduct might not amount to criminal negligence. But where a driver enters a blind curve in the darkness of the night, and permits his automobile to get onto the left side of the road, and fails to see an automobile approaching in a lawful manner from the opposite direction, reasonable minds not only might fairly conclude that he was guilty of

"reckless conduct or conduct evincing a marked disregard for the safety of others."

but could hardly conclude otherwise.

The record does not show the degree of the curve upon which the collision took place, nor does it indicate whether or not the curve was blind. However, the witnesses described it as a "bad turn," "a dangerous curve," "a pronounced curve," etc. And it is clear from defendant's own testimony that he (Riddle) did not see the Wells vehicle until an instant before the crash (too late to apply

the brakes or to turn aside). It is therefore inferable, in fact practically inescapable, that either he did not see what he should have seen, or the curve was so blind that his range of view was very limited, and that by failing to remain on his own side of the road he was criminally negligent.

Affirmed.

McDONOUGH, C. J., and LATIMER, J. concur.

PRATT, Justice.

I concur. As to the question of criminal negligence in driving around a curve on the wrong side of the road at night, I limit my concurrence to the conclusion that, in this case, it was a question for the trier of the facts to decide.

WADE, Justice.

I concur with the result, and except as herein pointed out with the reasoning of the prevailing opinion. However, I think that opinion over-emphasizes the duty of keeping on the right side of the center of the road, and stresses too little the factor which causes most accidents, the failure of the driver to keep his attention on his driving and the road ahead of him.

If at the time of the accident the colliding cars were rounding a blind curve, where an approaching vehicle could be seen only for a very short distance ahead, so that the driver, after he could see that there was a car approaching, would have only a very short time to avoid a collision, then it would be very important that the driver keep his vehicle not only on his right side of the road but that he keep as far to the right hand side as is practical under the road conditions then existing and in addition thereto that he keep his attention on his driving and constant lookout for approaching vehicles. The reason for this is obvious. Under such circumstances the driver does not know when he is going to meet an approaching car, but he knows that if he does he

will have very little time and only a short distance within which to avoid a collision. Under such circumstances it is highly dangerous to others using the highway for him to drive on the wrong side of the road with or without giving his whole attention to his driving.

Here the evidence does not disclose whether this was a blind curve or not. But the court would be justified in finding, from the fact that the collision occurred while defendant's car was partially on the wrong side of the highway, that he was guilty of driving with a marked disregard for the safety of others in being on the wrong side of the road without sufficient time after he could see the approaching car to avoid the collision, or if he did have sufficient time to avoid the collision after he could see the approaching car, in failing to avoid the collision after he saw the other car approaching either on account of his inattention to his driving, or of indifference to the result thereof, or on account of wilful misconduct.

If the place where the accident occurred was not a blind curve and the driver could see the lights of approaching vehicles for some distance ahead, then I think that if a driver, while he had his attention on the road and on his driving, and could see that no vehicle was approaching from the opposite direction, allowed his vehicle to get on the wrong side of the road he would not be guilty of criminal negligence. But the jury might find from the evidence and particularly the fact that the accident occurred with defendant's vehicle on the wrong side of the road, and the fact that the approaching vehicle had its lights burning at the time of the accident, that defendant drove in a marked disregard for the safety of others in driving on the wrong side of the road when he knew that another car was approaching, or while driving with such inattention to the road ahead of him that he did not even see the approaching car on the highway.

Whether this accident occurred at a blind curve or not, the probable cause thereof was the inattention of the driver to his driving or his failure to keep a proper look out for

approaching vehicles. While it is possible that the curve was so blind that he would be unable to avoid a collision after he could see the approaching vehicle with his car on the wrong side of the road as far as it was, it is very probable that the curve was not that short. It is also possible that defendant saw the approaching vehicle and was either indifferent to the results or wilfully remained on the wrong side of the highway knowing that he was endangering others on the highway, but that is very improbable. In my opinion if a man drives down the highway and pays so little attention to his driving that he fails to see that his vehicle is on the wrong side of the road while another vehicle is approaching, or fails to see the approaching vehicle when had he looked he could have seen it, he is guilty of driving in a marked disregard for the safety of others whether he is on a curve or not, I therefore conclude that the evidence is sufficient to sustain the judgment.