357 P.2d 183

**STATE of Utah, Plaintiff and Respondent,**

v.

**Joseph Ersol BERCHTOLD, Defendant and Appellant.**

No. 9265.

Supreme Court of Utah.

Nov. 21, 1960.

Walter G. Mann, Brigham City, for appellant.

Walter L. Budge, Atty. Gen., Vernon B. Romney, Asst. Atty. Gen., for respondent.

WADE, Justice.

Defendant, Joseph Berchtold, appeals from a conviction by a jury of negligent homicide,[1] an indictable misdemeanor. Defendant was charged with the death of Nora Jean Christiansen by driving his car in reckless disregard for her safety as his passenger.

1. Section 41-6-43.10, U.C.A.1953: "Negligent homicide—Death occurring within one year—Penalty—Revocation of license or privilege to drive.—(a) When the death of any person ensues within one year as a proximate result of injury received by the driving of any vehicle *in reckless disregard of the safety of others,* the person so operating such vehicle shall be guilty of negligent homicide." (Emphasis ours.)

On April 15, 1959, defendant drove his 1959 two-door Chevrolet sedan with his friend, Joseph Van Forrest, from Brigham City, their home town, through Logan in Cache Valley north to Smithfield, then several miles west to Newton, and while doing so crossed the Bear River bridge. There they picked up Nora, Forrest's girl friend, and started their return trip to Smithfield, where Nora had arranged a blind date for defendant. It was then about 8:30 and after dark. The return road runs generally in an easterly direction over the river bridge. The hard surface is from 22 to 23 feet wide with shoulders on the side, a borrow pit, then the boundary line fence. The bridge is only 17 feet wide with one-way traffic warning signs. About 200 feet east of the bridge the road makes a gradual curve to the northeast for 600 or 700 feet. Near the center of the curve a road takes off to the south. At the junction of these two roads one traffic lane turns east and another turns west with a three-pointed island in between them and the curve in the east-west road.

Defendant testified that at Nora's suggestion, that they would have to hurry, he increased his speed. He did not look at the speedometer, but he testified that he was not driving fast, at most 45 to 55 miles per hour. His guests had their heads down low looking at a badge as they approached the bridge. There he brightened his lights to see which way the road went, and no-

ticed the curve. As he turned with the curve he noticed he was in gravel and could feel the car skidding, but not too bad, turned his wheel and possibly hit his brakes, and it seemed like he "locked" the car sideways off the road. His lights turned around and suddenly flipped into the air and the car hit some trees and a power pole, and the next thing he remembered was that the car was stopped.

Defendant was alone in the car when it stopped. He found Nora lying on the side of the shoulder badly hurt and crying, and Forrest was unconscious near a tree. After trying to assist Nora he flagged some passing cars and soon an ambulance arrived and took Nora and Forrest to the hospital. Before the ambulance left four officers arrived who carefully inspected the road, the ground, the defendant's wrecked car, took a statement from defendant and eventually sent him to the hospital. Two of these officers were state highway patrolmen, and they made extensive measurements and carefully observed the condition and markings on the road and took extensive notes thereof.

That evening and the next day defendant was questioned many times, and he made a written statement about the accident. The officers testified that defendant estimated his speed at 70 miles per hour, the written statement says 65 miles per hour, and defendant testified he was not exceeding 45

to 55 miles per hour and that he gave the 70 miles per hour as his top speed because they acted like he had been driving awfully fast.

A curve in the road commenced about 200 feet east of the bridge, about 630 feet east of the bridge the right wheels of defendant's car left two parallel tire marks. Each mark was two inches wide and they were eight inches apart. The outside mark started 20 inches before the other and was four and one-half feet north of the south edge of the hard surface. It went 57 feet and 10 inches when it left the hard surface, and the inside tire mark went 77 feet, 6 inches to where it left the hard surface.

The radius of the curve of the inside mark, while it ran parallel with the outside tire mark for 55 feet, was 1,134 feet as compared with the radius of the curve of the road of 717 feet, which accounts for the car leaving the road. The State produced expert opinion from these facts that the car was traveling at a minimum of 110 miles per hour when it left the road. After the car left the road it went 80 feet partially sideways with the right side in front. The front wheels were partially on the shoulder and the rear wheels in the borrow pit. There the right side of the car struck a clump of trees and 53 feet further the right side struck another clump of trees and lost the right door, and two feet further, sheared off a utility pole. At that point the car swung around so that the front end faced toward the south away from the road and continued 67 feet, still going partially sideways, and came to rest with the front end through the boundary line fence and the rear end in the borrow pit some 15 feet south of the edge of the hard surface. This was about 886 feet from the bridge, 260 feet from where the tire marks started and about 680 feet from the beginning of the curve.

The right side of the car was badly damaged, the right front tire was down. There was a deep perpendicular dent behind the front end of the front bumper, the right door was pulled off and the body behind badly damaged. The right tail fin was mutilated and there was a deep perpendicular dent in the body where the right end of the rear bumper had been with the bumper bent back away from the body of the car.

Only three of defendant's many contentions require consideration: (1) The court erroneously refused to instruct the jury as requested. (2) Inadmissible evidence was received. (3) The evidence is insufficient to support the verdict.

■ (1) We find no substantial difference between an instruction given and the requested instruction which the court refused. The ideas expressed in .the two instructions are the same. The proposed instruction emphasizes the difference between

ordinary negligence and reckless disregard more than the one given, but we find no prejudicial error was committed.

(2) Defendant contends that the expert testimony of Dr. Wood, a physicist from Utah State University, was erroneously received. He made measurements, took weights and made driving tests with defendant's car after it had been repaired. There was a showing that with no repairs made to the engine, the car would travel more than 120 miles per hour. On these facts and the testimony of the investigating officers of the tire marks left on the hard surface before the outside marks left the road Dr. Wood, by using a formula, concluded that the minimum speed of the car when it made the marks was 110 miles per hour. As basis for his formula he used 55 feet of inside tire mark which had a 1,134 foot radius to a curve to the left with tire marks only two inches wide made by a more than four inch wide tire, while the inside or the left side tire left no tire marks whatever.

The outside tire mark was traced to the rear right wheel, with the front wheel tire mark eight inches inside. Normally the front wheel tire mark would be outside of the rear wheel mark on a curve with a radius of 1,134 feet about one-half inch and would travel eight inches inside only if the curve radius was only 78 feet, and not 1,134 feet. Defendant's expert witness testified that this shift from normal indicated an unexplained force on the rear of the car and rendered the formula used by the State's expert inaccurate to determine the car's speed; but the State's expert said that this would make no difference. Also, the defendant's expert testified that if the outside tire marks started four and one-half feet north of the south edge of the hard surface and went off the south edge of the hard surface after traveling 57 feet, 10 inches with the same angle and curved radius, the inside tire mark, which was eight inches inside, would only travel a fraction of 20 feet before it left the hard surface. Defendant contends that this shows an impossible situation and indicates inaccurate measurements. The State's expert readily conceded that slight mistakes in determining the arc of the curve would greatly affect the speed indicated by the formula. Defendant argues that the foregoing possible mistakes and unaccounted-for forces show that the State's expert testimony is speculative and not based on accurate data and should have been stricken because it invited the jury to speculate on the defendant's speed. It is not unusual for expert witnesses to disagree on the effects which some facts would have on the end result expressed in the opinion. However, a qualified expert is permitted to express an opinion even though other experts equally qualified may reach an opposite conclusion. In such case the weight to be given to such opinion is for the jury to determine. De-

**214**

fendant has cited no case and we have found none which holds that such evidence is inadmissible.

■■ (3) The evidence is sufficient to support the verdict. We reverse a jury verdict only where we conclude from a consideration of all of the evidence and the inferences therefrom viewed in the light most favorable to such verdict that the findings are unreasonable.[2] In considering this question we must keep in mind that this is a criminal prosecution, so the evidence must be sufficient to support a finding that all reasonable doubt in favor of the defendant has been eliminated. A mere preponderance of the evidence, or a finding that guilt is more probable than innocence, is not sufficient.[3]

What is the meaning of the provision in Section 41–6–43.10, U.C.A.1953, that death from driving "in reckless disregard of the safety of others" constitutes "negligent homicide"?[4] This court has not directly construed this provision.

■■ In State v. Lingman[5] we held that where a driver by reckless or marked disregard for the safety of others caused the death of another, he is guilty of criminal negligence constituting involuntary manslaughter.[6] The only difference in the terms used in that case to describe the degree of lack of care required for involuntary manslaughter, and the terms of this statute, is that this statute does not expressly use the term in "marked disregard for the safety of others" but only says "in reckless disregard" for such safety. From a careful study of the Lingman case we conclude that "marked disregard" was added to make doubly sure that "reckless disregard" requires a much greater degree of disregard for the safety of others than does ordinary lack of due care for such safety, or mere negligence. Although the distinction between these two concepts is a difference in degree of risk, "this difference in degree is so *marked* as to amount substantially to a difference in kind."[7] (Emphasis added)

We conclude that if the evidence reasonably supports a finding that "defendant consciously chose a course of action know-

---

2. See State v. Erwin, 101 Utah 365, at pages 400, 401, 120 P.2d 285, at pages 302 and 303; State v. Penderville, 2 Utah 2d 281, at page 286, 272 P.2d 195, at page 198.

3. See Lovett v. Continental Bank & Trust Co.; 4 Utah 2d 76, at pages 78 to 80, 286 P.2d 1065, at pages 1067 and 1068.

4. See note 1.

5. See State v. Lingman, 97 Utah 180, 91 P.2d 457, 466.

6. See Section 76–30–5, U.C.A.1953, and many cases cited in the annotation thereto.

7. See 2 Restatement of the Law of Torts, Section 500. See also Wood v. Taylor, 8 Utah 2d 210, at pages 213, 214, 332 P. 2d 215, at page 217, where we quoted from the foregoing citation with approval in construing the Idaho guest statute with similar language.

ing that such course would place his guests in grave and serious danger or with knowledge of facts which would disclose such danger to any reasonable person," [8] when he could have avoided such danger, he was guilty of reckless disregard for the safety of others. This does not require a finding that defendant was fully conscious of the great danger to others.[9] Our statute does not require an intentional accident nor the choosing of a highly dangerous course while fully conscious or aware of the danger confronting him in following such course. It does require the choosing of a course with grave and marked dangers, and the driver must be conscious and aware of the course he chooses, and such course must be so fraught with danger that all reasonable persons if they thought about it could not fail to recognize the danger. Our statute only requires reckless disregard for the safety of others, which is a much greater lack of care than ordinary negligence, but does not require as great a consciousness of the danger confronted as wilful misconduct required to create civil liability under our guest statute.[10] To be "reckless" does not require "wilfulness" but means rather heedless, careless, and rash inadvertence to consequences.[11] Recklessness may include wilfulness. It requires more than negligence, but a person may be reckless without being wilful. Recklessness indicates indifference and utter disregard for consequences and is not mere inadvertence nor error in judgment.[12]

■ From the foregoing analysis of the facts and the law we conclude that the evidence was ample from which the jury could reasonably find that there was no reasonable doubt that defendant drove his car in reckless disregard for his passengers' safety, thereby causing the death charge. By his own testimony, as he approached the narrow one-way bridge he accelerated his speed and then brightened his lights, observing the curve in the road. About 200 feet beyond the bridge the curve commenced and continued for more than 600 feet. More than 400 feet after the curve commenced, his right wheel tire marks on the outside of the curve commenced. Such marks were

8. See Wood v. Taylor, cited in note 7, involving the Idaho guest statute which recognizes liability to a guest for injuries caused by "reckless disregard" for his safety.

9. See State v. Lingman, note 5; State v. Bleazard, 103 Utah 113, 133 P.2d 1000; State v. Newton, 105 Utah 561, 144 P. 2d 290; State v. Thatcher, 108 Utah 63, 157 P.2d 258; State v. Olsen, 108 Utah 377, 160 P.2d 427, 160 A.L.R. 508; State v. Riddle, 112 Utah 356, 188

P.2 449; State v. Barker, 113 Utah 514, 196 P.2d 723; State v. Read, 121 Utah 453, 243 P.2d 439.

10. See section 41-9-1, U.C.A.1953.

11. See Robinson v. Helena Light & Ry. Co., 38 Mont. 222, 99 P. 837.

12. See Petersen v. Detwiller, 218 Iowa 418, 255 N.W. 529; also Reckless, Recklessly, Recklessness, 36 Words and Phrases, pp. 489 to 509; Wilful Misconduct, 45 Words and Phrases, pp. 302 to 320.

very narrow—only two inches wide—although made by a more than four-inch wide tire. This indicates that the wheels were holding their course without skidding sidewise. The left wheel tires, that is—the tires on the inside of the curve, left no marks which indicates that the car was swaying toward the right and most of the pressure was on the right wheels. These tire marks regardless of the dispute between the experts definitely indicated a very high rate of speed. The evidence shows that the car was capable of traveling more than 120 miles per hour. In 57-odd feet the outside tire mark left the hard surface. The inside mark traveled only 77-odd feet. The radius of the tire mark curve was much greater than the radius of the curve of the road, and since there were no skid marks, the car was driven into the borrow pit and did not go out of control before leaving the hard surface. After the outside tire marks left the hard surface, the car traveled more than 200 feet with the rear wheels in the borrow pit and the front wheels partially on the shoulder, and, most of the way, with the right side in front. The right side struck two clumps of trees, sheared off a utility pole, lost the right side door and the two passengers, mutilated the right side

and bent the right side end of the rear bumper away from the body, and finally came to rest with the left side in front and the front wheels through the boundary line fence.

All of these physical marks suggest a very high rate of speed. At times even defendant estimated his speed at 70 miles per hour. The State's expert opinion was that his speed was at least 110 miles per hour. Since the two marks indicate no skidding on the hard surface, possibly the car could have negotiated the curve even at the high rate of speed it was traveling had the defendant been alert to his danger and used skill in driving. Of course, there was nothing to prevent him from slowing down the car at any time before he left the surface. So this accident was evidently caused by great speed coupled with inattention in driving, or both. It is clear from the cases that we have decided construing "reckless disregard" that inattentive driving in the face of grave danger constitutes reckless disregard for the safety of others.[13]

Judgment affirmed.

CROCKETT, C. J., and HENRIOD, McDONOUGH and CALLISTER, JJ., concur.

13. See cases cited in note 9.