404 P.2d 677

**STATE of Utah, Plaintiff and Respondent,**

v.

**Larenzo Eugean PARK, Defendant and Appellant.**

No. 10270.

Supreme Court of Utah.

July 28, 1965.

---

**92**

Pugsley, Hayes, Rampton & Watkiss, Salt Lake City, for defendant and appellant.

Phil L. Hansen, Atty. Gen., Ronald N. Boyce, Chief Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

CROCKETT, Justice.

Upon a trial to the court without a jury, defendant, Larenzo Eugean Park, was con-

1. See State v. Berchtold, 11 Utah 2d 208, 357 P.2d 183.

victed of negligent homicide for having struck and killed Milton Clyde McMillan with his automobile. On appeal the defendant's principal point is that the evidence does not sustain the conviction.

The statute upon which the conviction is based, Section 41–6–43.10, U.C.A.1953, provides that one who causes death by driving a motor vehicle in "reckless disregard of the safety of others" shall be guilty of negligent homicide.

The term "reckless disregard of the safety of others" of course implies a much greater dereliction in hazarding the safety of others than ordinary negligence. However, it does not require any intent to do harm either generally, or to the victim in particular. What is essential is that it be shown beyond a reasonable doubt that the defendant drove in a manner that he knew, or should have known, was highly dangerous to others, and that he did so intentionly, or heedlessly, with a careless indifference to the consequences.[1] This court has said that the "doing of an act fraught with the potentiality of producing death amounts to such a reckless disregard for the safety of others"[2] that it will justify a conviction of this crime.

The incident occurred at about 8:30 p. m. on January 31, 1964, in front of the Taylorsville L. D. S. Ward House. A social

2. See Wood v. Taylor, 8 Utah 2d 210, 332 P.2d 215; State v. Barker, 113 Utah 514,

evening and dance was being held there. There were cars parked along the curb and some people were on the steps of the church at the time. Defendant, with his fiancee in the car, approached from the west. As he did so he pulled to his left around two automobiles which were traveling ahead of him and pulled back into his own south lane at about 400 feet west of the church. He failed to see either the 35-mile-per-hour speed sign, about 1000 feet west of the church, or the pedestrian-lane sign, about 200 feet west of it. There is some dispute about his speed. He testified that he thinks he was moving about 40 miles per hour, but he did not look at the speedometer. He struck the deceased in or very near the pedestrian crosswalk which crosses the street northward in front of the church.

Defendant argues that his comparatively moderate speed, even though in excess of the posted limit, combined with the fact that Mr. McMillan was a small man dressed in dark clothing, against the dark background of the asphalt road so that defendant did not see him at all prior to the impact, fail to establish the degree of culpability discussed above upon which to predicate a criminal conviction for negligent homicide. The merit of that position we

196 P.2d 723; and cases cited therein; State v. Riddle, 112 Utah 356, 188 P.2d 449; State v. Thatcher, 108 Utah 63, 157 P.2d 258; State v. Newton, 105 Utah 561, 144 P.2d 290.

need not decide. That is the defendant's version of what happened.

■ In reviewing such a conviction we are obliged to survey the evidence in the light favorable to the view taken by the trial court. The physical evidence and the testimony of other witnesses reasonably support the conclusion that the defendant was traveling at a high and dangerous rate of speed, in an area with which he was familiar and where he should have realized that people might be crossing the highway, without keeping a proper lookout or control of his car. The deceased was struck with such force that he was literally torn out of his shoes and thrown about 140 feet. Defendant says he applied his brakes immediately upon impact. They laid down skid marks on the asphalt highway of 129 feet. On the basis of this evidence and comparison with tests which had been made, an experienced officer estimated the speed of the defendant's car at between 55 and 65 miles per hour.[3] It seems to us so plain as hardly to admit of argument that the trial court could reasonably draw the conclusion that the defendant was guilty of automobile homicide under the tests discussed above in this opinion.

■ In regard to errors assigned in rulings on evidence, we think it is sufficient

3. See Gittens v. Lundberg, 3 Utah 2d 392, 284 P.2d 1115.

to say that they do not merit detailed discussion. In that connection it is appropriate to observe that because it can be safely assumed that the trial court will be somewhat more discriminating in appraising both the competency and the effect properly to be given evidence, the rulings on evidence are looked upon with a greater degree of indulgence when the trial is to the court than when it is to the jury.

Defendant also contends that the sentence imposed upon him is invalid. It was that he serve six months in jail and pay a fine of $500. But the judge added the conditions that if he voluntarily served three months in jail and paid a fine of $250 the sentence would be so modified, and that if he violated his probation the original sentence would be reinstated. Defendant argues that this sentence is unconstitutional because his acceptance of the favorable alternative would have the effect of depriving him of his right to appeal. We are in accord generally with the idea that it is ill advised for the trial court to attempt to devise a sentence to prevent an appeal, the right of which is assured in our Constitu-

tion.[4] That may have been intended but it has had no such effect in this case.

The fact is that the defendant has not been prevented from an appeal and review of his conviction, judgment and sentence. By its terms, the augmented portion of the sentence was only to be reinstated if the defendant should misbehave while on probation. This has not been done and the defendant as yet has no reason to complain thereof. Should he violate probation hereafter, that must be dealt with in accordance with the law for such cases provided, if and when that contingency arises. The actual effect of defendant's sentence is that he serve three months in jail and pay a fine of $250, because he is entitled to the most favorable view of the sentence imposed.[5] In any event if the sentence were erroneous, the remedy would be to have a correct sentence pronounced upon him.[6]

Affirmed. No costs awarded.

HENRIOD, C. J., and WADE, Mc-DONOUGH and CALLISTER, JJ., concur.

4. See Article VIII, Section 9, Utah Constitution.
5. That in case of uncertainty or ambiguity defendant is entitled to the most favorable aspect of sentence, see State v. Alex-ander, 15 Utah 2d 14, 386 P.2d 411; and authorities therein referred to in footnote 4 to that opinion.
6. Ibid.