The STATE of Utah, Plaintiff
and Respondent,

v.

Kenneth Paul BRYAN, Defendant
and Appellant.

No. 18948.

Supreme Court of Utah.

June 6, 1985.

Rehearing Denied Nov. 27, 1985.

Randall Gaither, Salt Lake City, for defendant and appellant.

David L. Wilkinson, Atty. Gen., Earl F. Dorius, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

STEWART, Justice:

Tamara Hill and Troy Caldwell, aged 16 and 17 respectively, were killed when a pickup truck driven by defendant ran a red light and collided with their automobile. A test performed approximately one hour after the accident revealed that defendant had a blood alcohol level of .30%, which was three times the level of intoxication needed to constitute legal intoxication at that time.[1] After a trial to the court, the defendant was convicted of two counts of manslaughter. U.C.A., 1953, section 76–5–205. Defendant appeals, contending that the trial court erred (1) in striking the testimony of defendant's expert witness, and (2) in denying defendant's motion to dismiss or to reduce the manslaughter charges.

I.

On June 5, 1982, defendant was driving his truck eastbound on 3900 South. One eyewitness, who was stopped for a red light at the intersection of 3900 South and 500 East, observed defendant's truck in his rear-view mirror. The truck, traveling at a high rate of speed, approached from behind and in the same lane as the witness. The truck changed lanes to avoid hitting the stopped car and drove through the red light without incident. Defendant's pickup proceeded eastward along 3900 South without slowing. The truck entered the intersection at 700 East against a second red light, once again changing lanes to avoid cars stopped for the light. In the intersection, the pickup collided with the victims' car.

One witness testified that he did not see any brake lights. Another witness estimated defendant's speed at approximately 50 miles per hour as defendant entered the second intersection.

After the collision, a third witness, who was a reserve officer for the Salt Lake County Sheriff's Department, attempted to render assistance to the victims. Noticing that defendant's truck was still running and fearing an explosion, she aided defendant in turning it off. She helped him out of the truck and sat with him on a nearby bus bench until the police arrived. She did not remember smelling alcohol, but she believed that defendant was drunk. Defendant stated to her that he knew he was going to the detoxification unit.

The investigating officer interviewed defendant at the crash site. Defendant refused an offer of medical assistance, claiming that he was not injured. The officer detected a noticeable odor of alcohol and noted that defendant appeared inebriated. After ordering the defendant to perform several field sobriety tests, the officer concluded that defendant was intoxicated and placed him under arrest. Later, while defendant was being transported to jail in the officer's patrol car, defendant volunteered that he was a very heavy drinker and that he had consumed three fifths of Cutty Sark whiskey. When the officer expressed doubt at this claim, defendant replied that the officer did not know him very well and that he was "one hell of a drinker."

II.

At trial, defendant called only one witness, Dr. Michael DeCaria, a clinical psychologist, who testified to the effects of alcohol on behavior generally, and that he had interviewed and tested defendant twice before trial. He then began to testify about information that defendant had related to him during the interviews about defendant's history of alcohol abuse and the specific circumstances leading up to the

**1.** We note that since defendant's trial the blood-alcohol level for determining legal intoxication has been reduced from .10 to .08%. U.C.A., 1953, § 41–6–44(1) (Supp.1985).

collision. Most importantly, Dr. DeCaria testified that defendant stated that he remembered nothing about the accident. Defendant had related that he remembered only that he had been drinking in a bar on the afternoon preceding the accident and that he awakened in jail the following afternoon. Based on the statements made by defendant at the interviews and on objective criteria,[2] Dr. DeCaria gave his opinion that defendant was suffering from "alcohol blackout" at the time of the accident and as a result defendant was "unable to think or consider risk . . . ." Defendant did not testify at the trial.

Throughout the direct examination of Dr. DeCaria, the prosecutor objected to the testimony as lacking a proper foundation. After a number of objections, the court allowed the State a continuing motion to strike all of Dr. DeCaria's testimony. At the close of evidence, the State renewed its motion to strike the testimony, citing Rule 56, Utah R.Evid. The court took the motion under advisement. Nine days later, but before judgment, the court granted the State's motion based on Rule 56. Defendant cites this ruling as prejudicial error.

### III.

Although we do not address the issue of the admissibility of hearsay statements made to a psychologist or a psychiatrist for foundational purposes, it is clear that the trial court did not err in excluding the psychological opinion testimony for reasons other than the hearsay nature of the evidentiary foundation for that testimony.[3]

On appeal, this Court may affirm the trial court's decision on any proper grounds, even though the trial court assigned another reason for its ruling. *Jesperson v. Jesperson,* Utah, 610 P.2d 326, 328 (1980); *Allphin Realty, Inc. v. Sine,* Utah, 595 P.2d 860, 861 (1979). Here, the testimony was inadmissible because it was immaterial.

The defendant was capable, before the onset of the alleged blackout, of knowing the risks he would likely create by drinking and driving while intoxicated; indeed Dr. DeCaria so testified. Although intoxication may be a partial defense to a specific intent crime, *State v. Sessions,* Utah, 645 P.2d 643 (1982), it is not a defense to a crime requiring a mens rea of recklessness. When a defendant is unaware of the serious risks he has created for the safety of others because of intoxication, the law holds that person responsible for having voluntarily and knowingly placed himself in that position. Utah Code Ann., 1953, § 76–2–306 provides:

> [I]f recklessness or criminal negligence establishes an element of an offense and the actor is unaware of the risk because of voluntary intoxication, his unawareness is immaterial in a prosecution for that offense.

The requisite mens rea of the manslaughter charge in this case is recklessness, and the defendant's blackout was nothing more than the effect of severe intoxication. Accordingly, § 76–2–306 gov-

---

**2.** During cross-examination, Dr. DeCaria testified that his opinion about defendant's state of mind was based approximately 50 percent on the statements made by defendant during the interview. Dr. DeCaria's testimony was also based on two psychological tests administered to the defendant by Dr. DeCaria, the Minnesota Multiphasic Personality Inventory, and the Weschler Adult Intelligence Scale, and on extensive experience treating alcoholics.

**3.** For authority holding that out-of-court interviews by a psychiatrist or psychologist may be used to support his or her opinion testimony, see *Lemmon v. Denver and Rio Grande Western Railroad,* 9 Utah 2d 195, 341 P.2d 215 (1959). Compare *Edwards v. Didericksen,* Utah, 597 P.2d

1328 (1979). *See also United States v. Roberts,* 62 F.2d 594 (10th Cir.1932); *State v. Clark,* 112 Ariz. 493, 543 P.2d 1122 (1975); *People v. Parks,* 195 Colo. 344, 579 P.2d 76 (1978); *People v. Herrera,* 12 Mich.App. 67, 162 N.W.2d 330 (1968); *State v. Myers,* 159 W.Va. 353, 222 S.E.2d 300 (1976). *See generally* Annot., "Admissibility of Physician's Testimony as to Patient's Statements or Declarations, Other Than Res Gestae, During Medical Examination," 37 A.L.R.3d 778 § 7 (1971); Annot., "Admissibility of Opinion of Medical Expert as Affected by His Having Heard the Person in Question Give the History of the Case," 51 A.L.R.2d 1051 sections 4, 5 (1957).

erns, and the evidence of blackout produced by intoxication was immaterial.

### IV.

■ Defendant claims that he was prejudiced by the timing of the court's ruling. He asserts that the trial court erred in striking the expert testimony on a post trial motion after first admitting that testimony. He argues that Rule 56(3), Utah R.Evid., required that the admission of evidence must stand if it is not excluded prior to the close of trial. Rule 56(3) provides that "[u]nless the judge excludes the testimony he shall be deemed to have made the finding requisite to its admission."

Defendant misstates the case when he argues that the motion to strike was first made after the trial. Contrary to defendant's contention, the prosecution's motion was first made during the direct examination of Dr. DeCaria. After a number of objections were made by the prosecution, the trial court granted the State a continuing motion, and the State renewed its objection and moved to strike prior to closing arguments. Defense counsel was aware that the motion had been made and that the court intended to take the matter under advisement. The defense made no attempt at that time to inform the court that granting the motion would require a different defense strategy.

■ Rule 56(3) fails to support defendant's argument; it merely states that if the trial court fails to exclude evidence, the evidence is deemed admitted. Rule 56(3) does not require the ruling to be made at a specific time. Here, the trial court did exclude the testimony on the State's timely motion. Defendant's argument regarding the timing of the exclusion is without merit.

### V.

Defendant next argues that the trial court erred in denying his motion either to dismiss the manslaughter charges or to reduce those charges to automobile homicide. Defendant makes four different arguments in support of his contentions: (1) that the manslaughter statute is preempted in vehicle cases by the automobile homicide statute; (2) that the mens rea elements of the crimes of negligent homicide and manslaughter in the criminal code are the same when § 76–2–306 negates voluntary intoxication as a defense; (3) that due process requires that defendant be charged under the automobile homicide statute; and (4) that the crime of manslaughter in the criminal code has the same elements as negligent homicide as defined in the motor vehicle code and that the defendant is therefore entitled to receive the lesser penalty for negligent homicide established by the motor vehicle code. We address each issue in the order presented.

First, defendant argues that the specific automobile homicide statute in the criminal code, § 76–5–207, preempts the less specific manslaughter statute whenever an intoxicated driver causes the death of another. Defendant relies on *State v. Twitchell,* 8 Utah 2d 314, 333 P.2d 1075 (1959), which held that the more recently adopted automobile homicide statute preempted the less specific and older voluntary manslaughter statute then in effect in cases involving death caused by an automobile driven by an operator under the influence of intoxicating liquor.

■ *State v. Twitchell,* was based on the concept that the prosecutor should not have the freedom to choose between charging either a felony or a misdemeanor when the two crimes have exactly the same substantive elements. We agree that that situation would deny defendant and others in his class equal protection of the laws, "*if the same identical facts* may be used in prosecutions under two completely integrated statutes, one a misdemeanor and the other a felony." *Id.* at 317, 333 P.2d at 1077 (emphasis added).

■ The critical distinction between this case and *Twitchell* is that the crimes of manslaughter and automobile homicide now differ. Prior to the amendment, both statutes required proof of reckless conduct. The identical facts could be used to prose-

cute a defendant under either statute. The legislature subsequently amended the automobile homicide statute to require only negligent conduct, § 76–5–207 (Supp.1985). Thus, the State must prove something more than the elements of automobile homicide to convict defendant of manslaughter. The State must prove that defendant was aware of and consciously disregarded a substantial and unjustifiable risk, § 76–2–103(3). There is ample evidence in this case to show that defendant acted with a more culpable mental state than negligence. Indeed, in *State v. Bindrup*, Utah, 655 P.2d 674 (1982), we approved the application of the manslaughter statute to facts nearly identical to this case. The trial court therefore correctly denied defendant's motion to dismiss or reduce the charges on the ground urged.

Second, defendant contends that he is entitled to the punishment provided for negligent homicide in the criminal code because when § 76–2–306 negates voluntary intoxication as a defense, there is no difference between the elements of the crime of manslaughter and those of the crime of negligent homicide in the criminal code. (Under the criminal code there are separate crimes denominated negligent homicide and automobile homicide.) The distinction between manslaughter and negligent homicide in the criminal code is the requisite mental state. *State v. Howard*, Utah, 597 P.2d 878, 881 (1979). Manslaughter requires a showing of recklessness; negligent homicide in the criminal code requires only criminal negligence.

■ Contrary to the defendant's assertions, § 76–2–306 does not render the two offenses indistinguishable. Section 76–2–306 provides that where "recklessness or criminal negligence establishes an element of an offense and the actor is unaware of the risk because of voluntary intoxication, his unawareness is immaterial in a prosecution for that offense." Defendant's argument that § 76–2–306 renders the two offenses indistinguishable overlooks the fact that the degree of intoxication may bear upon whether a defendant

was reckless or criminally negligent. Time and again we have held that many factors may be considered in determining the degree of culpability with which an actor acted. *See State v. Ruben*, Utah, 663 P.2d 445, 448–49 (1983); *State v. Riddle*, 112 Utah 356, 364, 188 P.2d 449, 453 (1948); *State v. Thatcher*, 108 Utah 63, 73, 157 P.2d 258, 262 (1945) (Wolfe, Justice, concurring). *See generally State v. Cook*, 21 Utah 2d 36, 439 P.2d 852 (1968); *State v. Selman*, 18 Utah 2d 199, 417 P.2d 975 (1966); *State v. Park*, 17 Utah 2d 90, 404 P.2d 677 (1965); *State v. Berchtold*, 11 Utah 2d 208, 357 P.2d 183 (1960); *State v. Adamson*, 101 Utah 534, 125 P.2d 429 (1942).

■ From the evidence presented at trial, it was not error for the trial court to conclude that the defendant had acted recklessly. The evidence established that the defendant had been drinking heavily before driving and had been driving at a high rate of speed while driving through red semaphore lights on heavily travelled roads. Clearly the defendant acted recklessly.

Third, defendant argues that any time an intoxicated driver causes the death of another, he must be charged with automobile homicide. The argument is without merit. As demonstrated above, the mens rea elements of manslaughter and automobile homicide are not the same, and an intoxicated person is certainly not incapable of reckless conduct. Our justice system contemplates a series of graded offenses that distinguished by increasingly culpable mental states. If the State can prove that a defendant acted with the more culpable mental state, the defendant can be convicted of the higher offense.

■ Defendant argues that since several recent homicide cases involving automobiles were charged as automobile homicides rather than manslaughter offenses, it was a violation of due process of law to charge him with manslaughter, rather than automobile homicide. Again we are constrained to point out that the defendant acted recklessly, not just negligently, and

therefore could be properly charged with manslaughter.

Defendant's fourth and final argument is that the crime of "negligent homicide," defined by § 41-6-43.10(a) of the motor vehicle code (which is a separate offense from the crimes of automobile homicide and negligent homicide in the criminal code, § 76-5-207 and § 76-5-206), is based on essentially the same elements as define the crime of manslaughter in the criminal code. § 76-5-205. Therefore, under the authority of *State v. Loveless*, Utah, 581 P.2d 575 (1978), and *State v. Shondel*, 22 Utah 2d 343, 453 P.2d 146 (1969), the defendant is entitled to the lesser penalty or, under *State v. Hales*, Utah, 652 P.2d 1290 (1982); *State v. Clark*, Utah, 632 P.2d 841 (1981); and *Helmuth v. Morris*, Utah, 598 P.2d 333 (1979), the defendant should have been charged with the more specific crime.

The crime of negligent homicide is defined in the motor vehicle code as follows:

When the death of any person ensues within one year as a proximate result of injury received by the driving of any vehicle *in reckless disregard of the safety of others*, the person so operating such vehicle shall be guilty of negligent homicide.

§ 41-6-43.10(a) (emphasis added). Negligent homicide is punishable as a misdemeanor. Manslaughter, on the other hand, which is committed when one *"[r]ecklessly causes the death* of another ...,"* § 76-5-205(1)(a), is punishable as a felony. Recklessness is defined in § 76-2-103(3) of the criminal code which provides that a person acts recklessly:

[W]hen he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

The State contends that *State v. Berchtold*, 11 Utah 2d 208 857 P.2d 183 (1960) differentiates between "recklessness" and "reckless disregard" by holding that "reckless disregard" in the motor vehicle code may be established if the defendant knew or should have known of the risks caused, whereas "recklessness" under the criminal code requires actual awareness. The language of *Berchtold* is not inconsistent with this opinion.

■ We cannot change the legislative policy with respect to the penalties embodied in the statutes at issue. Nevertheless, we cannot disregard our responsibility to assure the rational and evenhanded application of the criminal laws. Equal protection of the law guarantees like treatment of all those who are similarly situated. Accordingly, the criminal laws must be written so that there are significant differences between offenses and so that the exact same conduct is not subject to different penalties depending upon which of two statutory sections a prosecutor chooses to charge. To allow that would be to allow a form of arbitrariness that is foreign to our system of law. The Legislature may make automobile homicide which is committed recklessly either a misdemeanor or a felony, but it cannot make the crime both a felony and a misdemeanor, leaving the choice to the prosecutor as to whether he charges a felony or a misdemeanor.

■ Because a "reckless" defendant could, for the same behavior, be charged under either statute, the statutes give a prosecutor impermissible discretion to choose a defendant's penalty based upon which statute the prosecutor chooses to charge under. We held in *State v. Shondel*, 22 Utah 2d 343, 435 P.2d 146 (1969), that if two statutes are wholly duplicative as to the elements of the crime, the law does not permit a prosecutor to exercise the wholly unfettered authority to decide whether the crime should be charged as a misdemeanor or a felony. Because the elements of the motor vehicle statute and the manslaughter statute are the same, defendant is entitled to the lesser punishment

provided under the motor vehicle statute, § 41–6–43.10.

It is a matter for the legislature to fix the punishment for reckless disregard of human life. Clearly it can make the penalty a felony; but it cannot allow the prosecutor to make the decision for it. Therefore, the defendant is entitled to be sentenced under the negligent homicide statute in the motor vehicle code, rather than the manslaughter provision in the criminal code. If the punishment provided in the motor vehicle code is not appropriate to the gravity of the crime, it is for the Legislature to make the necessary change in the law.

We therefore reverse and remand for sentencing in accordance with this decision.

HOWE and DURHAM, JJ., concur.

HALL, Chief Justice (concurring):

The facts of this case amply support the conviction of manslaughter, which is punishable as a felony. However, I am constrained to join the Court in overturning the sentence imposed because the Legislature has not seen fit to make any distinction between the elements of the offense of manslaughter and the offense of negligent homicide, punishable as a misdemeanor under the motor vehicle code.

The lack of distinction between the two statutes compels this Court to reach a result that does not adequately punish the offender. Further, the result, while necessary under the law, does not meet what appears to have been the legislative intent in enacting the manslaughter statute. In any event, the lack of any distinction between the two statutes is intolerable and is deserving of prompt legislative action.

BALLIF, District Judge, concurs in the concurring opinion of HALL, C.J.

ZIMMERMAN, J., does not participate herein; GEORGE E. BALLIF, District Judge, sat.

PETITION FOR REHEARING

STEWART, Justice:

The State has filed a petition for rehearing in this matter in which it earnestly and vigorously contends that the Court erred in its disposition of the case because of our failure to take into account the effect of *State v. Berchtold*, 11 Utah 2d 208, 357 P.2d 183 (1960) in ruling that the manslaughter statute and the motor vehicle code impose different penalties for the same criminal conduct. The State urges that the term "recklessness" as defined in the criminal code, U.C.A., 1953, § 76–2–103(3) (1978) does not mean the same as the term "reckless disregard of the safety of others" which is in § 41–6–43.10(a) of the motor vehicle code.

Under the criminal code, a defendant, to have acted with "recklessness," must be consciously, and therefore subjectively, aware of a substantial and unjustifiable risk of causing a death. *See* § 76–2–103(3). Under *Berchtold*, the Court held that the term "reckless disregard" under the motor vehicle code permitted a conviction if a " 'defendant consciously chose a course of action knowing that such course would place his guests in grave and serious danger or with knowledge of facts which would disclose such danger to any reasonable person.' " 11 Utah 2d at 214–15. In other words, under this standard a defendant could be found guilty if the defendant was subjectively conscious, or objectively should have been conscious, of a grave and serious risk that he had created.

The Court in *Berchtold* also stated that the motor vehicle statute did not "require an intentional accident nor the choosing of a highly dangerous course while fully conscious or aware of the danger confronting him in choosing such course. [However] [i]t does require the choosing of a course with grave and marked dangers, and the driver must be conscious and aware of the course he chooses, and such course must be so fraught with danger that all reasonable persons if they thought about it could not fail to recognize the danger." In all events, the statute required a "much great-

er lack of care than ordinary negligence...." *Id.* at 215.[1]

The State argues that the *Berchtold* definition of "reckless disregard" would permit a conviction under the motor vehicle statute for action which a defendant "knew" or "should have known" was highly dangerous to others. Although that is true, it does not change the results required in this case. Under the manslaughter statute, the defendant must have actually known of the risks; simply disregarding risks which he should have been aware of is not sufficient to sustain a conviction under that provision. But he could also have been convicted under the motor vehicle statute if he actually knew of the risks, as the jury in this case found. It is irrelevant that the defendant could not have been convicted of risks about which he should have known, but did not. Accordingly, the premise of the Court's main opinion that the defendant could have been convicted under either the manslaughter statute or the motor vehicle code for precisely the same act, but with different punishments, is wholly valid.

For the foregoing reasons, the petition for rehearing is denied.

HALL, C.J., HOWE and DURHAM, JJ., and GEORGE E. BALLIF, District Judge, concur.

ZIMMERMAN, J., does not participate herein.

1. Section 76–2–103(3) (1978) defines conduct that is performed recklessly:
   [W]hen he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

This test is congruent with the test in *Berchtold* as to the nature of the risk. *Berchtold* did not establish a criminal negligence test in place of recklessness.